955 F.2d 229
 19 Media L. Rep. 1953
 In re GRAND JURY 87-3 SUBPOENA DUCES TECUM.
UNITED STATES of America, Plaintiff-Appellee,
v.
MODEL MAGAZINE DISTRIBUTORS, INC.; R. Enterprises, Inc.;
MFR Court Street Books, Inc.,
Defendants-Appellants, PHE, Inc., Amicus
Curiae. (Two Cases)
In re GRAND JURY 87-4 SUBPOENA DUCES TECUM.
 Nos. 88-5619, 88-5620.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 1, 1991.
Decided Jan. 29, 1992.
As Amended March 2, 1992.
 
 Herald Price Fahringer, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, New York City, argued, for defendant-appellant R. Enterprises; Ralph J. Schwarz, Jr., New York City, argued, for defendant-appellant MFR Court Street Books (Diarmuid White, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Richard S. Brown, Jr., New York City, Gerard G. Treanor, Jr., Venable, Baetjer & Howard, McLean, Va., on brief), for defendants-appellants.
 Andrew Gerald McBride, Associate Deputy Atty. Gen., Crim. Div., U.S. Dept. of Justice, Washington, D.C., argued (Marian E. Wysocki, Attorney-Advisor, Office of Legal Counsel, Janis Kockritz, Sp. Atty., Crim. Div., U.S. Dept. of Justice, Washington, D.C., Henry E. Hudson, U.S. Atty., William G. Otis, Sr. Litigation Counsel, Bradford R. Clark, Sp. Asst. U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.
 Bruce J. Ennis, Jr., Ann M. Kappler, Jenner & Block, Washington, D.C., on brief, for amicus curiae.
 Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 R. Enterprises, Inc. and MFR Court Street Books, Inc. appealed the district court's denial of their motion to quash grand jury subpoenas seeking various corporate records, arguing in part that the denial violated their First Amendment rights. This court reversed on other grounds, and the Supreme Court reversed our decision. In re Grand Jury 87-3 Subpoena: Subpoena Duces Tecum, 884 F.2d 772 (4th Cir.1989), rev'd sub nom. United States v. R. Enterprises, --- U.S. ----, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991). The Supreme Court remanded for further proceedings, and this court ordered the parties to address the question of whether the First Amendment requires heightened scrutiny of the grand jury subpoenas in question. Because we have determined that the facts of this case do not implicate the First Amendment, we affirm.
 
 I.
 
 2
 A grand jury sitting in the Eastern District of Virginia began to investigate allegations of interstate transportation of obscene material in 1986. The grand jury issued a subpoena to Model Magazine Distributors, Inc. (Model) calling for the production of over 2,000 videotapes allegedly depicting sexually explicit conduct. Model moved to quash the subpoena. The district court denied the motion and held Model in contempt; Model appealed. This court reversed the district court's denial of the motion to quash, because the subpoenas were impermissibly vague and overbroad. In re Grand Jury Subpoena: Subpoena Duces Tecum, 829 F.2d 1291 (4th Cir.1987), reh'g denied, 844 F.2d 202 (4th Cir.1988) ("Model I").
 
 
 3
 In 1988, the grand jury subpoenaed 193 videotapes from Model and various corporate records from Model and two other companies: R. Enterprises, Inc. (R. Enterprises) and MFR Court Street Books, Inc. (MFR). R. Enterprises is a New York distributor of adult material; MFR is a Brooklyn bookstore that sells adult books, magazines, and videotapes. The same individual owns Model, R. Enterprises, and MFR. While Model admittedly shipped material to customers located in the Eastern District of Virginia, R. Enterprises and MFR have repeatedly denied having any connection to that district. The corporations moved to quash the subpoenas, but the district court denied the motions, finding that the subpoenas were properly "tailored" and were "fairly standard business subpoenas." On August 12, 1988, the district court held all three corporations in contempt for failure to comply, fined each corporation $500 per day, and stayed imposition pending resolution of an appeal.
 
 
 4
 On appeal, this court affirmed in part, reversed in part, and remanded in part. In re Grand Jury 87-3 Subpoena Duces Tecum, 884 F.2d 772 (4th Cir.1989) ("Model II"), rev'd sub nom. United States v. R. Enterprises, --- U.S. ----, 111 S.Ct. 722, 112 L.Ed.2d 795 (1990). The Model II court applied the "relevancy, admissibility, and specificity" test of United States v. Nixon, 418 U.S. 683, 700, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039 (1974) and upheld the subpoenas for Model's business records. Id. at 776. As for R. Enterprises' and MFR's business records, the court quashed the subpoenas because the government had failed to show either relevance or admissibility. Id. at 776-77. Finally, as to the 193 videotapes, the court reversed and remanded for further proceedings. Id. at 777-79.
 
 
 5
 The Supreme Court granted the government's petition for certiorari on the question of whether a grand jury must demonstrate the relevance and admissibility of corporate business records before an otherwise valid subpoena can be enforced.[1] The Court unanimously reversed, finding that the Nixon test applies only to trial subpoenas and not to grand jury subpoenas. United States v. R. Enterprises, --- U.S. ----, 111 S.Ct. 722, 726-27, 112 L.Ed.2d 795 (1991). Construing Federal Rule of Criminal Procedure 17(c), the Court held that when a grand jury subpoena is challenged on relevancy grounds the district court must decide whether there is "no reasonable possibility" that the materials sought will produce information relevant to the investigation. Id. 111 S.Ct. at 728. Applying its newly created test to this case, the Court found that three facts supported the district court's denial of the motion to quash: the same person owned Model, R. Enterprises, and MFR; the three corporations did business in the same area; and one of the corporations (Model) shipped materials into the Eastern District of Virginia. Furthermore, the Court stated, R. Enterprises' and MFR's
 
 
 6
 blanket denial of any connection to Virginia did not suffice to render the District Court's conclusion invalid. A grand jury need not accept on faith the self-serving assertions of those who may have committed criminal acts. Rather, it is entitled to determine for itself whether a crime has been committed.
 
 
 7
 Id.
 
 
 8
 The Court expressed no view on whether the First Amendment had any bearing on these subpoenas for business records but instead remanded the case to this court for further proceedings. This court ordered the parties to brief and argue the question of "whether and in what manner the First Amendment requires a heightened standard of scrutiny in this case."
 
 
 9
 On remand, R. Enterprises and MFR (collectively, hereinafter, "R. Enterprises") have urged this court to adopt a "substantial relationship" test. Under this test, when the recipient of a subpoena makes a prima facie showing of arguable First Amendment infringement, the prosecution has the burden of establishing that the subpoena served a compelling governmental interest and requested evidence substantially related to the investigation. R. Enterprises reasons that the test would prevent a chilling effect on First Amendment rights and appropriately balance First Amendment freedoms and the government's need to investigate suspected crimes. The government has not passed this test, R. Enterprises argues, because there is no evidence that either R. Enterprises or MFR have had any contact with the Eastern District of Virginia.
 
 
 10
 The government argues that the alleged burden on First Amendment rights does not justify heightened scrutiny of grand jury subpoenas and the substantial relationship test would unreasonably delay grand jury proceedings. Alternatively, the government asserts that it has satisfied the substantial relationship test.
 
 II. Discussion
 
 11
 R. Enterprises' argument rests largely on Bursey v. United States, 466 F.2d 1059, reh'g denied, 466 F.2d 1090 (9th Cir.1972). In Bursey, a grand jury was investigating threats against the President and incitements to insubordination in the armed forces. Two employees of the Black Panthers' newspaper refused to answer questions about the identity and activities of people who worked on the newspaper or were members of the Black Panthers. Id. at 1081. The Bursey court held:
 
 
 12
 When governmental activity collides with First Amendment rights, the Government has the burden of establishing that its interests are legitimate and compelling and that the incidental infringement upon First Amendment rights is no greater than is essential to vindicate its subordinating interests.
 
 
 13
 When the collision occurs in the contest of a grand jury investigation, the Government's burden is ... to show that there is a substantial possibility that the information sought will expose criminal activity within the compelling subject matter of the investigation.
 
 
 14
 Id. at 1083 (citations omitted). The Bursey court then found that the prosecution had not met its burden. Id.
 
 
 15
 The parties disagree over Bursey's application to our facts. Like this case, Bursey involved a grand jury investigation. In addition, the Bursey court balanced the competing interests of First Amendment freedoms and crime investigation. R. Enterprises urges a similar balancing here, and the concept of balancing certainly has Solomonic appeal. Unlike our case, Bursey involved a crackdown on political dissidents and publications by those dissidents. In other words, there is no doubt that Bursey involved speech protected by the First Amendment, while the government argues that this case involves only typical business records subpoenas. However, to refer to the grand jury's subpoenas here as business records subpoenas may be something of a euphemism. It appears that the government may really be after R. Enterprises' customer lists. In such a case, all the government need do is threaten this sort of subpoena, and, if word of it leaked, the business of any enterprise would dry up. Therefore, a business records subpoena can potentially have a very chilling effect. Thus, to distinguish Bursey on its facts would be somewhat simplistic.
 
 
 16
 However, and more importantly, the Supreme Court has twice declined to apply the substantial relationship test in cases involving subpoenas challenged on First Amendment grounds. University of Pennsylvania v. EEOC, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Branzburg was a consolidation of three cases[2] involving grand jury subpoenas to newspaper reporters. The reporters refused to reveal confidential sources; "[t]he heart of the[ir] claim [wa]s that the burden on news gathering resulting from compelling reporters to disclose confidential information outweighs any public interest in obtaining the information." Branzburg, 408 U.S. at 682, 92 S.Ct. at 2657. Although the Court stated that the government would have satisfied the substantial relationship test, id. at 700-01, 92 S.Ct. at 2666, the Court declined to apply the test and rejected claims of First Amendment infringement very similar to R. Enterprises'. Id. at 701-06, 92 S.Ct. at 2666-69. While the Court stated that "grand juries must operate within the limits of the First Amendment," id. at 708, 92 S.Ct. at 2670, its only example of First Amendment protection in the grand jury setting was an investigation instituted or conducted in bad faith. Id. at 707, 92 S.Ct. at 2670.
 
 
 17
 The language quoted above appears in a four-Justice plurality opinion. Justice Powell concurred in a separate opinion. Three Justices dissented, favoring adoption of the substantial relationship test. One Justice dissented separately, believing that newspaper reporters should never have to reveal their sources. We find that Justice Powell's opinion is the clearest explanation of how Branzburg applies to our facts.
 
 
 18
 Justice Powell first discussed the good faith limitation on grand jury investigations. A party believing the grand jury is acting in bad faith:
 
 
 19
 will have access to the Court on a motion to quash and an appropriate protective order may be entered. The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions.
 
 
 20
 Id. at 710, 92 S.Ct. at 2671. Then, Justice Powell rejected the substantial relationship test urged by the three-Justice dissent and R. Enterprises:
 
 
 21
 To be sure, this would require a "balancing" of interests by the Court, but under circumstances and constraints significantly different from the balancing that will be appropriate under the Court's decision. The newsman witness, like all other witnesses, will have to appear; he will not be in a position to litigate at the threshold the State's very authority to subpoena him. Moreover, absent the constitutional preconditions that ... th[e] dissenting opinion would impose as heavy burdens of proof to be carried by the State, the court ... would be free to balance the competing interests on their merits in the particular case. The new constitutional rule endorsed by that dissenting opinion would, as a practical matter, defeat such a fair balancing and the essential societal interest in the detection and prosecution of crime would be heavily subordinated.
 
 
 22
 Id. at 710 n. *, 92 S.Ct. at 2671 n. *. R. Enterprises advances the substantial relationship test and questions the prosecution's authority to subpoena their business records. Yet, the Branzburg Court emphatically rejected the substantial relationship test as inappropriate and stated that witnesses cannot litigate the state's authority to subpoena them "at the threshold." R. Enterprises has attempted to distinguish Branzburg as concerning only evidentiary privilege. While the Branzburg Court used the term "privilege" repeatedly, the Court considered a question very similar to ours. R. Enterprises argues for the same sort of "privilege," the privilege to refrain from responding to a subpoena until the government satisfies the substantial relationship test.
 
 
 23
 The government also relies on University of Pennsylvania v. EEOC, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), which involved a subpoena duces tecum. In that case, the EEOC sought peer review materials pursuant to an investigation of discriminatory tenure decisions. The university argued that the government had to show more than mere relevance, in order to avoid violating the university's First Amendment right to academic freedom. The Court rejected that argument and held that a university does not enjoy a special privilege requiring a judicial finding beyond mere relevance before it must disclose peer review materials pertinent to charges of discriminatory tenure decisions. Id. at 201, 110 S.Ct. at 588. The Court reasoned that any injury to academic freedom was speculative; there would be some disclosure even if heightened scrutiny applied, because the government would sometimes satisfy the test. The Court concluded, "Thus, the 'chilling effect' petitioner fears is at most only incrementally worsened by the absence of a privilege." Id. at 200, 110 S.Ct. at 588.
 
 
 24
 The University of Pennsylvania Court unanimously reaffirmed the Branzburg Court's rejection of any heightened scrutiny requirement for subpoenas, its declaration that "the First Amendment does not invalidate every incidental burdening of the press," and its reluctance to recognize a constitutional privilege of uncertain effect and scope. Id. at 201, 110 S.Ct. at 588. The Court also considered the possibility of a bad faith exercise of grand jury powers, but noted there was no allegation or indication of bad faith in that case.[3] Id. at 201 n. 8, 110 S.Ct. at 588-89 n. 8. Because the Court found no First Amendment infringement, it did not reach the government's argument that it had satisfied the substantial relationship test. Id. at 201-02, 110 S.Ct. at 588-89.
 
 
 25
 In light of those two Supreme Court cases and the facts of this case, we must decline to apply the substantial relationship test. Under Justice Powell's analysis in Branzburg, the district court should balance the possible constitutional infringement and the government's need for documents when it rules on the motion to quash, on a case-by-case basis and without putting any special burden on the government. The district court below satisfied that standard in finding that the subpoenas were properly "tailored" and that the documents were relevant. Indeed, the Supreme Court discussed the documents' relevancy at length, noting especially that the same individual owned Model, MFR, and R. Enterprises, and that Model had shipped materials into the Eastern District of Virginia in the past. United States v. R. Enterprises, --- U.S. ----, 111 S.Ct. 722, 728, 112 L.Ed.2d 795 (1991). With courts both below and above finding the government needs these documents, we are bound to agree. Because we have held that the substantial relationship test does not apply on these facts, we do not reach the government's alternative argument that it has satisfied that test.
 
 
 26
 Although we affirm the district court's denial of the motion to quash on these facts, we also must note that we are not prepared to rubber-stamp every subpoena of business records of a commercial enterprise that distributes material in a presumptively protected medium. There would be a serious danger of prosecutorial abuse if a grand jury could subpoena the business records of any enterprise in the country on the flimsiest of connections to the judicial district in which the prosecutor operates. Such an unchecked subpoena power would allow any prosecutor to target the affairs of a business with whose expressive activities that prosecutor disagrees or when that prosecutor senses the prospect of political profit in so targeting. To prevent the chilling effect such prosecutorial abuse would cause, we caution district courts to apply with special sensitivity, where values of expression are potentially implicated, the traditional rule that "[g]rand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass." R. Enterprises, 111 S.Ct. at 727.
 
 
 27
 While we have found that Branzburg controls here, that opinion leaves a paradox. On one hand, the Branzburg plurality stated that the First Amendment applies to grand jury proceedings. Branzburg, 408 U.S. at 708, 92 S.Ct. at 2670. On the other hand, the plurality's only example of First Amendment applicability was as protection against an investigation instituted or conducted in bad faith. Id. at 707, 92 S.Ct. at 2670. However, district courts can control prosecutorial abuse in any setting, not just in cases involving the First Amendment. Therefore, the Supreme Court has not given any indication that the First Amendment truly does affect the standards governing grand jury investigations. However, as we have concluded above, this is not a case in which First Amendment rights are implicated. Resolution of the "First Amendment versus Grand Jury" dilemma must await another day. For now, the judgment of the district court is
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 The government did not seek certiorari relating to this court's decision on the 193 videotapes. Model cross-petitioned for certiorari, asking the Supreme Court to review on First Amendment grounds this court's decision requiring Model to produce its business records. The Court denied Model's cross-petition. Model Magazine Distribs. v. United States, --- U.S. ----, 110 S.Ct. 2618, 110 L.Ed.2d 639 (1990). Thus, the Court's review related solely to R. Enterprises' and MFR's business records
 
 
 [2]
 One of the cases involved an investigation of the same Black Panther activity investigated in Bursey. Caldwell v. United States, 434 F.2d 1081 (9th Cir.1970), rev'd sub nom. Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)
 
 
 [3]
 As in University of Pennsylvania and Branzburg, there is no allegation of grand jury bad faith in our case. While we find no indication of bad faith per se, we do note that the government's repeated complaints that R. Enterprises and MFR are guilty of delay ring hollow. The government could have proceeded against Model, the one appellant with any likely connection to the Eastern District of Virginia, over two years ago. Instead, the government appears more determined to use this grand jury to establish precedent than to investigate crime