# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: Grand Jury, JOHN DOE No.
G.J. 2005-2

UNITED STATES OF AMERICA,
                              *Appellant,*

               v.

UNDER SEAL,
                                *Appellee.*

No. 06-4612

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(2:06ms84)

Argued: November 30, 2006

Decided: February 22, 2007

Before WIDENER and WILKINSON, Circuit Judges,
and David A. FABER, Chief United States District Judge for the
Southern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the opinion,
in which Judge Widener and Judge Faber joined.

## COUNSEL

**ARGUED:** Grace Y. Chung Becker, UNITED STATES DEPART-
MENT OF JUSTICE, Civil Rights Division, Washington, D.C., for

Appellant. Christopher Scott Boynton, CITY ATTORNEY'S OFFICE, Virginia Beach, Virginia, for Appellee. **ON BRIEF:** Wan J. Kim, Assistant Attorney General, Dennis J. Dimsey, Karl N. Gellert, UNITED STATES DEPARTMENT OF JUSTICE, Civil Rights Division, Washington, D.C., for Appellant. Leslie L. Lilley, Mark D. Stiles, Andrew B. Pittman, CITY ATTORNEY'S OFFICE, Virginia Beach, Virginia, for Appellee.

---

**OPINION**

WILKINSON, Circuit Judge:

This appeal arises from an order by the district court quashing a subpoena duces tecum. The subpoena was issued by a federal grand jury to a City Police Department ("the Department") to obtain the records of the Department's internal investigation into a complaint filed against an officer. Given the particular circumstances of this case, the district court did not abuse its discretion in quashing the subpoena, and we now affirm its judgment.[1]

I.

An individual arrested by the City Police Department filed a complaint with the Department, alleging that a particular officer used excessive force against him in the course of arrest. The complaint resulted in an investigation by the Department's internal affairs office. During the internal investigation, Department officials interviewed various officers, including the officer identified in the arrested individual's complaint.

It is Department policy that officers are required to comply fully with internal investigations as a condition of their employment. False testimony or other failure to comply may result in disciplinary action or dismissal. Officers who are questioned as part of an internal inves-

---

[1]In the interest of protecting the confidentiality of the grand jury proceedings, *see* Fed. R. Crim. P. 6(e), we refrain from referring to involved parties by their proper names.

tigation are notified in writing that their responses may not be used against them in criminal proceedings. The Department's general written policy on internal investigations reiterates this guarantee and further states that material relating to internal investigations will be treated as confidential. The policy goes on to state, "This is not to imply that such files are not discoverable in legal proceedings."

The United States Attorney's Office and the Criminal Section of the Civil Rights Division of the United States Department of Justice undertook an investigation of the same incident to determine whether it constituted a civil rights violation under 18 U.S.C. § 242 (2000)(deprivation of rights under color of law). In connection with this investigation and at the United States' behest, a federal grand jury issued a subpoena duces tecum requiring the production of documents relating to the Department's internal investigation.

The City moved to quash the subpoena, claiming that compliance would be "unreasonable" pursuant to Federal Rule of Criminal Procedure 17(c) for two reasons. First, the City argued that compliance would destroy the confidentiality of the internal investigation and would thus severely undermine the Department's ability to conduct such investigations effectively. Second, the City contended that compliance would be inconsistent with the interviewed officers' Fifth Amendment rights against self-incrimination.

The United States responded that the interviewees enjoyed no reasonable expectation of protection against a subpoena and that any interest in confidentiality was satisfied by the fact that grand jury proceedings are secret. The United States further argued that compliance held no Fifth Amendment risks because of two safeguards against the use of self-incriminating testimony. First, all internal investigation materials would be screened by a "*Garrity* review team," so named for *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967), which prohibited the use in criminal proceedings of governmental employees' self-incriminating statements obtained under threat of termination. The *Garrity* review team would screen the materials before they were given to the prosecutors and redact any potentially self-incriminating statements, as well as any material that relied upon such statements. The *Garrity* team members would play no role in any subsequent

investigation or prosecution, and the material redacted by the team would never be seen by the prosecutors, much less by the grand jury.

Second, if an officer were to be indicted and believed that his own privileged statements were used to indict him, he would be entitled to a *Kastigar* hearing, at which the government would bear the burden of "prov[ing] that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Kastigar v. United States*, 406 U.S. 441, 460 (1972).

The United States furthermore asserted its own interest in obtaining the information and the grand jury's power to subpoena it. At the hearing on the City's motion to quash, the government noted that any false statements by officers in the course of the internal investigation might form the basis of an independent charge of obstruction of justice. The government also asserted that it required the internal investigation materials in order to "close . . . the file" on the complaint. Counsel for the United States stated there was "no expectation that [the case] will turn into a prosecutable offense" and that it was "99.9 percent certain" that the civil rights complaint was "a bunch of baloney."

The district court granted the City's motion to quash the subpoena. The court found that both the City and the United States asserted highly significant law enforcement interests with respect to the "'policing' of the police." *United States v. Doe*, 434 F. Supp. 2d 377, 381 (E.D. Va. 2006). The court found that the City established that compliance would pose substantial risks for confidentiality and Fifth Amendment interests, while the United States for its part could easily obtain the desired information by subpoenaing the interviewed officers directly, thus avoiding the risks of self-incrimination, the complexities of the *Garrity* review procedure, and the potential destruction of the Department's ability to investigate itself. While noting that the interests of the grand jury would as a general matter prevail, the court held that, in this particular instance, the City's asserted interests outweighed those of the United States, and thus compliance with the subpoena would be unreasonable under Rule 17(c). The United States appeals.

This court has jurisdiction to review a district court order quashing a subpoena pursuant to 18 U.S.C. § 3731 (Supp. 2002). *See In re*

*Grand Jury Subpoena*, 175 F.3d 332, 336 (4th Cir. 1999); *United States v. (Under Seal)*, 745 F.2d 834, 835 n.1 (4th Cir. 1984).

We review the grant of a motion to quash a subpoena under Rule 17(c) for abuse of discretion. *See United States v. Fowler*, 932 F.2d 306, 311-12 (4th Cir. 1991); *In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291, 1296 (4th Cir. 1987). "A district court has abused its discretion if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) (internal quotation marks omitted).

## II.

The grand jury is a unique institution within the criminal justice system. Belonging to no branch of government, the grand jury is a "constitutional fixture in its own right . . . serving as a kind of buffer or referee between the Government and the people." *United States v. Williams*, 504 U.S. 36, 47 (1992) (internal quotation marks omitted). Its mission is to "inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991).

Although the grand jury operates with great independence, "the powers of the grand jury are not unlimited and are subject to the supervision of a judge." *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972). One such judicial limitation arises from Federal Rule of Criminal Procedure 17(c)(2), which provides that a district judge may quash or modify a subpoena duces tecum "if compliance would be unreasonable or oppressive."

Courts have recognized various ways in which a subpoena may be unreasonable or oppressive under Rule 17(c). Rule 17(c) offers a vehicle for a subpoenaed party to assert a constitutional, statutory, or common-law privilege. *See Branzburg*, 408 U.S. at 688; *see, e.g.*, *In re Grand Jury Proceedings*, 45 F.3d 343, 345 (9th Cir. 1995); *In re Grand Jury Proceedings: Subpoena Duces Tecum*, 827 F.2d 301, 305 (8th Cir. 1987). In the absence of such a privilege, a subpoena may still be unreasonable or oppressive under Rule 17(c) if it is irrelevant,

*see R. Enters.*, 498 U.S. at 301; abusive or harassing, *see In re Grand Jury Subpoena*, 175 F.3d at 340; *United States v. (Under Seal)*, 714 F.2d 347, 350 (4th Cir. 1983); overly vague, *see United States v. Loe*, 248 F.3d 449, 466 (5th Cir. 2001); or excessively broad, *see In re Grand Jury Proceedings*, 601 F.2d 162, 165 (5th Cir. 1979). Additionally, some courts have recognized that Rule 17(c) enables district courts to quash a subpoena that intrudes gravely on significant interests outside of the scope of a recognized privilege, if compliance is likely to "entail consequences more serious than even severe inconveniences occasioned by irrelevant or overbroad requests for records." *In re Grand Jury Matters*, 751 F.2d 13, 18 (1st Cir. 1984); *see, e.g.*, *United States v. Bergeson*, 425 F.3d 1221, 1222-23 (9th Cir. 2005) (quashing subpoena seeking non-privileged information about attorney-client relationship).

In this case, the City argued that compliance was unreasonable because it would burden the City's significant interests in preserving the confidentiality of its investigations and forestalling the potential violation of officers' Fifth Amendment rights. As the party seeking to avoid compliance with the subpoena under Rule 17(c), the City bore the burden of demonstrating unreasonableness. *See R. Enters.*, 498 U.S. at 300-01; *In re Grand Jury Subpoena*, 920 F.2d 235, 244 (4th Cir. 1990).

To determine whether the City met this burden, the district court balanced its asserted interests against the United States' interests in enforcing the subpoena. This balancing took place with an explicit recognition that a presumption of regularity attaches to grand jury subpoenas; in fact, the district court acknowledged that in most cases the interests in favor of enforcing the subpoena would prevail. Thus the balancing undertaken by the district court did not constitute an abuse of discretion. *See In re Grand Jury Proceedings No. 92-4*, 42 F.3d 876, 880 (4th Cir. 1994) (balancing interests implicated in grand jury subpoena of attorney fee records); *In re Grand Jury 87-3 Subpoena Duces Tecum*, 955 F.2d 229, 234 (4th Cir. 1992) (balancing government's needs against possible constitutional infringement by grand jury subpoena); *see also R. Enters.*, 498 U.S. at 303 (Stevens, J., concurring in part and concurring in the judgment) ("[Rule 17(c)] requires the district court to balance the burden of compliance, on the

one hand, against the governmental interest in obtaining the documents on the other.").

Nor did the district court abuse its discretion in concluding that, in this instance, the City's interests outweighed those asserted by the United States. As the Supreme Court has stated with regard to Rule 17(c), "what is reasonable depends on the context." *R. Enters.*, 498 U.S. at 299 (internal quotation marks omitted). "The factors the district court must consider under Rule 17(c)(2) . . . cannot sensibly be converted into a mechanical rule enabling an escape from case-by-case judgment." *Bergeson*, 425 F.3d at 1225. We have explicitly left such case-by-case analysis to the district court's "considered discretion." *In re Grand Jury Proceedings No. 92-4*, 42 F.3d at 880. The district court acted within its discretion in assessing the factors at issue here.

## A.

We address the City's interests initially. First, the district court permissibly took cognizance of the City's very real concern that the Police Department preserve its ability to police itself by maintaining the confidentiality of its investigations. The internal investigation mechanism serves the same purpose as a criminal investigation by the United States Attorney's Office or Department of Justice: to uncover, and ultimately to deter, civil rights violations and other abuses. In many instances, internal investigations may offer the most effective way to pursue those goals. A police department is able to respond to a complaint quickly, while witnesses are still available and memories are still fresh. Perhaps most importantly, a strong and visible internal investigations office is in a unique position to deter misconduct in the first place.

Yet such investigations face an uphill battle due to the so-called "blue wall," the tendency of law enforcement officers to place solidarity above all else and to be less than fully cooperative with investigations of fellow officers. "Officers who report misconduct are ostracized and harassed; become targets of complaints and even physical threats; and are made to fear that they will be left alone on the streets in a time of crisis." *Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures*

*of the Police Department* 53 (1994). In such a setting, the confidentiality of internal investigations may be not only desirable but essential. The district court was permitted to recognize that handing the statements over to an outside party or agency, including one involved in criminal investigations, would be perceived by cooperating officers as a serious compromise of confidentiality, notwithstanding the provisions of Federal Rule of Criminal Procedure 6(e).

The United States contends that the subpoena does not disrupt an expectation of confidentiality, because Departmental policy states that its confidentiality safeguards are "not to imply that [internal investigation materials] are not discoverable in legal proceedings." This disclaimer does not change the fact that the policy as a whole reflects the Department's interest in maintaining confidentiality to the fullest extent possible, an understandable concern given the policy's importance to the lawful functioning of law enforcement. The disclaimer certainly does not foreclose any recognition of the importance of confidentiality by the district court.

Moreover, in this case, where the ultimate interests of both federal and local law enforcement are in exposing and deterring police misconduct; where compliance with the subpoena arguably inflicts a lasting harm on the local entity's ability to pursue that goal; and where the federal grand jury has other means to achieve this goal without co-opting the work of the local entity, it is not unreasonable to conclude that principles of federalism require some modest recognition of a local government's efforts which the record leaves no reason to believe were pursued in other than good faith. *See Matter of Special April 1977 Grand Jury*, 581 F.2d 589, 593 (7th Cir. 1978) (per curiam) (federal subpoena of materials from state attorney general's office enforceable where compliance would not impair integrity of the state or its ability to function effectively). For these reasons, the district court did not err in recognizing the City's interest in fostering the efficacy of internal investigations by protecting their confidentiality.

B.

Second, the district court recognized the City's concern about the potential for self-incrimination involved in releasing the internal investigation materials. *Garrity* provides that if a governmental

employee is compelled to incriminate himself on pain of dismissal or other penalty, the state cannot use his statements against him in a subsequent criminal prosecution. *Garrity*, 385 U.S. at 500; *see Wiley v. Doory*, 14 F.3d 993, 996 (4th Cir. 1994). Thus any self-incriminating information provided by officers in the course of the internal investigation may not be used to prosecute them.

The United States argues that the subpoena does not threaten this guarantee, because the *Garrity* review process described above prevents disclosure of self-incriminating information at the outset, and a *Kastigar* hearing can remedy any reliance on such information after the fact. The United States notes that the *Garrity* review process has been approved by the Ninth and Tenth Circuits in cases involving federal grand jury subpoenas of law enforcement officers' testimony in administrative hearings. *See In re Grand Jury Subpoena*, 75 F.3d 446, 448 (9th Cir. 1996); *In re Grand Jury Subpoenas*, 40 F.3d 1096, 1103 (10th Cir. 1994).

We have no reason to disapprove of the *Garrity* review process, cumbersome though it may be, and we have no reason to express an opinion on its suitability in all instances. We simply hold that the potential availability of a *Garrity* review team is insufficient to establish abuse of discretion on the part of the district court in this case.

We note moreover that the district court took the City's two interests—in preserving confidentiality and forestalling possible self-incrimination problems—together, and weighed those interests as a whole against those of the United States. This circumstance distinguishes this case from the Ninth and Tenth Circuit cases relied upon by the United States, which involved assertions of officers' Fifth Amendment rights but not the confidentiality interests of their departments. *See In re Grand Jury Subpoena*, 75 F.3d at 447 (appellant police officers asserted Fifth Amendment interest); *In re Grand Jury Subpoenas*, 40 F.3d at 1098-99 (same); *see also In re Grand Jury Proceedings*, 45 F.3d at 345-46 (same). In the absence of the City's assertion of an interest in the confidentiality of its own investigative procedures, this may well have been a different case.

## C.

On the other side of the ledger, the district court found the United States' interest in obtaining this particular information, by the specific

method of a subpoena duces tecum, to be less substantial. The court noted that the federal grand jury could obtain the information by sub- poenaing the interviewed officers directly. The district court went too far in this respect, because the existence of an alternative means of obtaining information is insufficient to render a subpoena unreason- able or subpoenaed material irrelevant to a grand jury investigation. *See In re Grand Jury Proceedings No. 92-4*, 42 F.3d at 879.

The district court, however, was not required to ignore the fact that counsel for the United States repeatedly suggested that the informa- tion sought was of negligible value to the government. Counsel stated that the government merely required the internal investigation materi- als in order to "close . . . the file," as the government attorneys were "99.9 percent certain" that the complaint was "a bunch of baloney" and there was "no expectation that it [would] turn into a prosecutable offense."

We recognize, of course, that the government has an interest in ascertaining whether a crime has been committed and that in many instances it will be unable to do so until the grand jury has undertaken its own investigation. This interest remains valid, even where, as here, the subpoena is not directed against an individual but against a local entity with an identical interest in investigating whether misconduct has occurred. This being the case, we do not think that the district court was in any sense compelled to quash this subpoena, only that it did not abuse its discretion by taking into account the government's representations.

The United States now argues that the court should ignore its "ex- tremely frank" statements regarding the subpoena and the underlying investigation. But the court is under no such obligation. The govern- ment obviously made these statements in the hope that they would influence the district court in its favor, and thus it is in a precarious position to complain that the opposite occurred. The district court was within its discretion to take cognizance of the government's own assessment of its interest in the information.

The court also did not abuse its discretion in crediting these repeated statements over the government's suggestion that the sub- poena might uncover evidence that officers lied during the internal

investigation and thus provide a basis for an obstruction of justice charge. We certainly recognize that cover-ups and otherwise inadequate procedures on the part of state and local law enforcement entities are a real danger, and that the Department of Justice or the United States Attorney's Office may at times need to investigate not only officer misconduct, but the very procedures by which such misconduct is dealt with at the state and local level. But while fully recognizing these concerns as a general matter, we are confident that the district court properly assessed the government's interest in this case in accordance with the government's own characterization.

### III.

We thus conclude on these facts that the district court did not abuse its discretion in finding that the City had established that compliance with the subpoena would be unreasonable under Rule 17(c). A reversal on this record would be a declaration that state and local investigations of possible police misconduct were seldom worthy of federal respect.

The judgment of the district court is hereby

*AFFIRMED.*