DIAZ, Circuit Judge,
dissenting in part and concurring in part:
While the majority opinion highlights the many missteps in this case, it ultimately assigns sole responsibility for them to the Appellants, affirming the judgment of the district court across the board. I disagree, and would hold instead that the district court abused its discretion in granting the BCPD’s motion to quash based on its blanket conclusion that the documents sought by the Appellants were irrelevant. And, looking to the domino effect of that decision on the Appellants’ subsequently denied motion to substitute, I do not believe that the court’s error was harmless. Accordingly, although I concur in the remainder of the opinion, I am unable to join Part II.B.
I.
In considering the district court’s decision to quash the Appellants’ request for documents related to Cook’s death, the majority properly emphasizes the deference that we owe the district court on appeal. Review for abuse of discretion, however, does not mean a district court’s authority is carte blanche. See United States v. Under Seal (In re Grand Jury), 478 F.3d 581, 584 (4th Cir.2007) (“A district court has abused its discretion if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding.” (quoting Morris v. Wacho-via Sec., Inc., 448 F.3d 268, 277 (4th Cir.2006))); see also United States v. Mason, 52 F.3d 1286, 1289, 1293 (4th Cir.1995) (noting the deferential standard of review, but finding an abuse of discretion). Mindful that I may not substitute my judgment for that of the district court, I believe *827 nonetheless that in quashing the Appellants’ document request in its entirety on relevance grounds, the court abused its discretion, and that this error in turn infected the court’s analysis of “good cause” as to the Appellants’ later-filed motion to substitute.
As support for its decision to grant the BCPD’s motion to quash, the district court stated simply that it was “fully satisfied that the documents sought by [the Appellants] are irrelevant to the claims that are now pending.” J.A. 18.[1] I do not dispute that most of the documents sought by the Appellants were irrelevant. Yet the relevance of documents responsive to the first three requests — including incident reports, witness interviews, surveillance records, and statements from police officers related to the tragic events of August 14, 2007 and involving Cook — is equally clear. Moreover, in opposing the BCPD’s motion to quash, the Appellants specifically argued that some of the documents would lead to evidence regarding their claims against Officers Howard and Green “and would also lead to the disclosure of the identity of the other ■police officers at the scene.” Id. 192 (emphasis added). Significantly, had the district court ordered the BCPD to produce those documents that were relevant to the remaining claims, the Appellants would have known on or before October 15, 2010 that Officers Fried and Choi were also involved in Cook’s pursuit.
Thus, it is little wonder, as the majority acknowledges, that the district court’s wholesale quashing of the requests “related to Cook’s death” is “more problematic.” Maj. Op. at 813. I agree, particularly given that the operative procedural rule grants a district court the power to quash or modify a subpoena. See Fed.R.Civ.P. 45(c)(3) (emphasis added). In my view, a district court abuses its discretion when— as in this case — it fails to recognize or consider the range of options available to it before ruling on a motion to quash. For example, in Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818-19 (5th Cir.2004), the Fifth Circuit held that the district court abused its discretion in quashing a subpoena “outright,” noting in part that the court did not “attempt to modify the subpoena to cure any overbreadth” and adding that “[generally, modification of a subpoena is preferable to quashing it outright.” See also Linder v. Nat’l Sec. Agency, 94 F.3d 693, 698 (D.C.Cir.1996) (agreeing that “a modification of a subpoena is generally preferred to outright quashing,” but finding no abuse of discretion where the subpoena request could not be modified “in any fruitful manner”). Here, the district court’s decision to quash in toto the Appellants’ request for production of documents swept far too broadly.
While reluctant to concede the district court’s error, the majority nevertheless attempts to excuse it by noting that the BCPD acknowledged in the motion to quash its obligation to produce “non-privileged, non-disciplinary/personnel related responsive documents in its possession ... that pertain specifically to the facts and circumstances of the August 14, 2007 incident.” J.A. 178 n. 2. That concession, however, is far from satisfying when put in context, particularly since the district court placed no conditions or limitations on its order to quash, and thus the BCPD was free to produce documents — or not — at its leisure. As it happened, the BCPD did not produce the documents until Novem *828 ber 22, 2010, well after both the October 15, 2010 return date set forth in the Appellants’ request for production of documents and the October 12, 2010 deadline for amending pleadings.
II.
It is against this backdrop that I consider the district court’s related denial of the Appellants’ motion to amend their pleadings (by substituting Officers Fried and Choi as party defendants) as lacking “good cause.” The majority insists that the district court’s earlier ruling on the motion to quash “did not directly bring about the Appellants’ inability to timely acquire information about Officers Fried and Choi’s alleged presence and participation in the events of August 14,” Maj. Op. at 815, opting instead to place sole responsibility for that result on the Appellants’ lack of diligence. The Appellants certainly deserve substantial blame for the procedural mess that is this case. But unlike the majority, I am unwilling to ignore the domino effect of the district court’s error on the motion to quash when considering whether the Appellants subsequently demonstrated good cause to amend their pleadings.
In analyzing this issue, I am of course bound by the “harmless error” doctrine, which commands that “[ujnless justice requires otherwise, no error ... by the court ... is ground for ... vacating, modifying, or otherwise disturbing a judgment or order” and that we must “disregard all errors and defects that do not affect any party’s substantial rights.” Fed.R.Civ.P. 61. See Tagupa v. Bd. of Dirs., 633 F.2d 1309, 1312 (9th Cir.1980) (citing Rule 61 and noting that “[t]he harmless error doctrine applies to discovery orders”); see also Schultz v. Butcher, 24 F.3d 626, 632 (4th Cir.1994) (declining to excuse the district court’s exclusion of evidence as harmless where a party “was prevented from fully developing evidence relevant to a material issue”). I conclude here, however, that the district court’s error on the motion to quash ruling was not harmless.
In arriving at that conclusion, I necessarily concede that the Appellants (1) inexplicably set a return date for the request for production of documents that was three days beyond the scheduling order’s deadline for joining parties and amending pleadings, (2) did not request an extension of the scheduling order deadlines after the district court granted the motion to quash, and (3) failed to ask the district court for permission to conduct discovery prior to the entry of the scheduling order. Yet these mistakes were not inexorably fatal, as “good cause” does not demand perfection by a litigant. See 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1522.2 (3d ed. 2010) (“The use of the good-cause standard [for modifying scheduling orders], rather than allowing modification only in cases of manifest injustice as is done for other pretrial orders, indicates that there may be more flexibility in allowing some relief.”) (citation omitted).
As it relates to the “good cause” determination, it was not until November 22, 2010 that the BCPD first disclosed that Officers Fried and Choi were involved in the pursuit of Cook. A mere eight days later, the Appellants filed the motion to substitute, arguing that they “could not have reasonably moved to amend the complaint to substitute the names of these John Doe defendants any earlier” than November 22, 2010. J.A. 202.
Even recognizing the Appellants’ many procedural blunders, had the district court parsed the request for documents when considering the motion to quash, and ordered the production of those documents that were patently relevant, the Appellants would have obtained the reports of Officers Fried and Choi by October 15, 2010 at the latest — rather than five weeks later. *829 Admittedly, the Appellants may nevertheless have been left to file an untimely motion to substitute, but a trial judge considering whether there is “good cause” to allow such a motion surely must account for the length of the delay. See O’Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 155 (1st Cir.2004) (affirming denial of motion to amend filed five months after the scheduling order deadline and concluding that “[s]uch a long and unexplained delay vindicates the district court’s conclusion that plaintiffs were not diligently pursuing this litigation”).[2]
As did the district court, the majority faults the Appellants for failing to more actively pursue discovery on the front end of the case regarding the other officers involved in the pursuit. Fair enough, but here again, some context helps to soften the blow. Specifically, as emphasized at oral argument, while the Appellants suspected that other officers were involved in the alleged conspiracy following Cook’s death, they also believed that Howard and Green were the officers who initially pursued Cook — and this belief was not without reason.
Shortly after Cook’s death (but before filing suit), the Appellants requested that the BCPD preserve and produce certain documents related to the incident, and in response, the BCPD provided a copy of the motor vehicle accident report and the police department’s incident report. It was these documents that identified Howard as the reporting officer and Green as the officer who initially pursued Cook on foot. Thus, the only documents the BCPD provided before the Appellants filed suit suggested that Officers Howard and Green were properly-named defendants, and said nothing of Officers Fried and Choi’s involvement in the pursuit. It was not until the BCPD’s disclosure on November 22, 2010 — which included reports from Officers Fried and Choi dated August 14, 2007 — that the Appellants learned otherwise.
Moreover, it is not clear to me, as the majority asserts, that the Appellants “almost certainly could have ascertained [Officers Fried and Choi’s] presence significantly earlier than they did.” Maj. Op. at 817. For example, although Officer Howard’s answer to interrogatories listed Officers Fried and Choi as present at the scene, he does not assert that they were involved in the pursuit. And in his later deposition, Officer Howard agreed that he “did not recognize” Officer Fried, J.A. 733, and did not know Officer Choi.[3] Further, *830 although Officer Bradley testified in his deposition that he told Cook’s fiancée shortly after the incident that he “saw” Officers Fried and Choi at the scene, id. 499, Cook’s fiancee stated in her answer to interrogatories only that Officer Bradley indicated that “two of his co-workers were already there” when he arrived, id. 859.
But even conceding that the Appellants should have been more conscientious in pursuing discovery, I think it necessary to consider their shortcomings against the backdrop of the district court’s error on the motion to quash. On that score, it bears repeating that the documents disclosed on November 22, 2010 fell well within the ambit of the Appellants’ first three requests for production of documents, and that had the district court not quashed the request for these relevant documents, the Appellants would have learned of Officers Fried and Choi’s involvement in the pursuit by at least October 15, 2010, if not sooner. It is conceivable then that the Appellants might have been able to comply with the district court’s deadline in the scheduling order for amending the pleadings, or at worse have been a few days beyond it, thus making the “good cause” analysis a far closer question.
In short, I believe that justice requires the district court to consider anew its “good cause” determination on the motion to substitute, in light of its failure to consider the full breadth of its discretion on the motion to quash, and the resulting impact on the Appellants’ ability to timely discover the relevant facts warranting an amendment to their pleadings.[4]
III.
For the reasons set forth above, I dissent from Part II.B of the majority opinion.

. The majority also highlights the district court’s assertion that the BCPD should not be put to the expense of assembling the requested documents. The expense consideration, however, trailed the court's relevance finding. That is, immediately after determining that the requested documents were "irrelevant,” the court opined that “[tjherefore, the [BCPD] should not be put to the expense” of assembling them. J.A. 18.

. Curiously, the district court's order denying the motion to substitute makes little mention of the seven-week delay between the filing of the motion and the deadline in the scheduling order for seeking such relief. A general frustration, however, with various other delays in the litigation clearly drove the court’s conclusion that the Appellants failed to demonstrate good cause. Specifically, the court noted that the (1) Appellants’ motion to substitute came nearly three years after Cook’s death, (2) suit was filed in February 2010 and although the scheduling order was not entered until September 9, 2010, this was due to the Appellants’ naming of several improper defendants, and (3) Appellants did not move for leave to conduct pre-scheduling order discovery. Any frustration on the part of the district court with the slow progress of the litigation — a sluggishness that the court attributed solely to the Appellants — was certainly not helped by the filing of a motion to substitute seven weeks past the scheduling order deadline.

. Admittedly, Green testified at his deposition that Choi was among the officers who responded to the scene where Green was with Cook’s body, and that he ultimately learned that Officer "Freel or Fried, I believe” was pursuing Cook that day, and that "Officer Choi may have assisted.” J.A. 828. Such vague statements, however, do not suggest that the Appellants "almost certainly could have ascertained [Officers Fried and Choi’s] presence significantly earlier than they did.” Maj. Op. at 817. Indeed, even when presented with a photograph of Officer Fried, the most Officer Green could say was that ”[i]t *830 looks like it could be [the officer who pursued Cook],” but that he was "not sure.” J.A. 829-30.

. In a footnote accompanying its order denying relief on the motion to substitute, the district court suggests that the Appellants’ attempts to join Officers Friend and Choi might well have been futile under Federal Rule of Civil Procedure 15. The district court, however, never reached the merits of the proposed amendment under Rule 15, and neither do I.