EDUARDO C. ROBRENO, District Judge.
The Court has been asked to rule on whether Joseph Santaguida, an octogenarian and a retired lawyer who suffers from mid-severe dementia, should be required to testify at an evidentiary hearing concerning his representation of the defendant, *854 Joseph Massimino, at trial over five years ago. ECF No. 1919.
The Court has considered Defendant's need for Santaguida's testimony, the probative value of that testimony, and the hardships that would be imposed on Santaguida. The Court finds Santaguida has met his burden to quash the subpoena. The Court will not compel Santaguida to testify.
I. INTRODUCTION
The subpoena in this case was issued in relation to Defendant's § 2255 Motion. Defendant was convicted of RICO conspiracy following a four-month jury trial in which Defendant was represented by Santaguida. Defendant was sentenced to incarceration for 188 months. Defendant's direct appeal was denied, United States v. Massimino, 641 F. App'x 153 (3d Cir. 2016), and his § 2255 Motion followed, ECF No. 1809.
One of the grounds raised in support of the § 2255 Motion is ineffective assistance of trial counsel. ECF No. 1848 at 2-3. Defendant's claim of ineffectiveness is premised on myriad allegations of Santaguida's failings before and during trial. Id. Defendant also alleges that Santaguida's performance was "compromised by the onset of cognitive impairment." Id. at 3.
The merits of such a claim of ineffectiveness turn solely on two questions: 1) did "counsel's representation [fall] below an objective standard of reasonableness?" and 2) were "any [such] deficiencies in counsel's performance ... prejudicial to the defense?" Strickland v. Washington, 466 U.S. 668, 687-88, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court conducted an evidentiary hearing to develop the record for the § 2255 Motion. That hearing is now closed except as to potential testimony by Santaguida.
The motion to quash has been briefed by Defendant, Santaguida (through counsel), and the Government (see ECF Nos. 1967, 1968, 1969), and is now ripe for disposition.
II. LAW
A proceeding under § 2255 is a continuation of a defendant's criminal case. United States v. Frady, 456 U.S. 152, 182, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) ("The Advisory Committee's Notes for the § 2255 Rules emphasize repeatedly that a proceeding under § 2255 is a continuation of the criminal trial and not a civil proceeding."). Nevertheless, Rules 6 and 12 of the Rules Governing § 2255 Proceedings specifically allow for a court to rely on either civil or criminal rules. As discussed below, the civil and criminal rules essentially require a would-be subpoena-quasher to meet the same burden, and so the result here would be the same under either the civil or the criminal rules. Therefore, the Court will apply the teachings under both sets of rules to the facts of this case.
Under both the criminal and civil rules, the moving party seeking to quash the subpoena must demonstrate that the requirements to quash have been met. See In re Grand Jury, John Doe No. G.J.2005-2, 478 F.3d 581, 585 (4th Cir. 2007) ; Diodato v. Wells Fargo Ins. Servs. USA, Inc., No. Civ. A. 1:12-CV-02454, 2013 WL 6054824, at *1-2 (M.D. Pa. Nov. 15, 2013) (quashing subpoena because, in-part, the subpoena sought irrelevant information).[1]
*855 Counsel for Santaguida invokes Federal Rule of Criminal Procedure 17(c)(2), under which a court "may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). One Circuit has found that a subpoena issued pursuant to this criminal rule may be unreasonable or oppressive "if it is irrelevant; abusive or harassing; overly vague; or excessively broad." In re Grand Jury, 478 F.3d at 585 (internal citations omitted).
The civil rule for quashing a subpoena is similar to the criminal rule. Compare Fed. R. Civ. P. 45(d)(3)(A)(iv)with Fed. R. Crim. P. 17(c)(2). Despite the civil rule's current use of the words "undue burden," this phrase was only included in a 1991 amendment and swapped out the "traditional language of 'unreasonable and oppressive.' " Wright & Miller, 9A Federal Practice & Procedure § 2463.1 (3d ed. 2008) (Quashing or Modifying a Subpoena). The "change in the language for quashing a subpoena [was] semantic only, and was not intended to change existing law." Id."When analyzing whether a [civil] subpoena places an undue burden on a non-party, the court considers issues such as relevance, the requesting party's need, the breadth of the request, and the burden imposed." Diodato, 2013 WL 6054824, at *1 (citing Charter Oak Fire Ins. Co. v. Am. Capital, Ltd., Misc. No. 1:12-MC-00358, 2012 WL 5862735, at *2 (M.D. Pa. Nov. 19, 2012) ); see also Alexander v. F.B.I., 186 F.R.D. 21, 34 (D.D.C. 1998) ("In consideration of whether a subpoena places an undue burden on the party subpoenaed, it has been stated that 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed' should be considered." (quoting United States v. Int'l Bus. Machs. Corp., 83 F.R.D. 97, 104 & n.12 (S.D.N.Y. 1979) ) ).
As to the nature of the undue burden on a witness for complying with a subpoena, a witness must show there would be "a clearly defined and serious injury." Millsaps v. Aluminum Co. of Am., No. CIV. 10-84924, 2012 WL 203458, at *2 (E.D. Pa. Jan. 24, 2012) (quotation marks omitted) (quoting City of St. Petersburg v. Total Containment, Inc., Misc. Case No. 07-191, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008) ).
The parties and non-party did not cite, and the Court is not aware of, a case where a court has considered specifically whether a cognitive impairment affects a witness's ability to participate in discovery in connection with § 2255 proceedings.[2]
*856 Ultimately, however, decisions by other courts are only of limited value because the facts and circumstances of each subpoena and its challenger are unique. Int'l Bus. Machs., 83 F.R.D. at 104.
III. DISCUSSION
In this case, the Court considered Defendant's need for Santaguida's testimony, the probative value of that testimony, and the hardships that would befall Santaguida if he were required to testify at the § 2255 Motion's evidentiary hearing. The Court heard testimony from three witnesses: Santaguida's son, Rocco; Santaguida's treating physician, Dr. Sammartino, testifying as both a fact and expert witness; and Defendant's retained expert, Dr. Levin. See ECF Nos. 1957, 1970. Expert reports and medical records were also submitted to the Court. See ECF Nos. 1919, 1943.
A. Defendant's need
To the extent Santaguida's testimony about what actions he did or did not take may be a probative area of inquiry, the merits of the § 2255 Motion would not turn on Santaguida's testimony. For one, the trial record speaks for itself. Moreover, Defendant has alleged the existence of independent, corroborative evidence of ineffective conduct, and has already adduced testimony from witnesses on such matters, including Edwin Jacob, Esq., counsel for one of the co-defendants at trial, and Victoria Clark, Santaguida's secretary. The value of Santaguida's own testimony about what he did or did not do before and during trial is therefore cumulative and certainly not crucial.
B. Probative value
Despite Defendant's insistence that Santaguida must testify, the value of Santaguida's testimony is minimal. Certain lines of inquiry are simply irrelevant. Defendant's underlying argument concerning Santaguida's cognitive abilities at trial overlooks that to determine whether Santaguida provided ineffective assistance of counsel, the inquiry is an objective one under Strickland. Again, the question is only how was trial counsel's performance ineffective, and it is not why was it so. Indeed, trial counsel may have a subpar performance on any given day for any number of reasons, but none of such reasons would be relevant to the Strickland inquiry. Similarly, Santaguida's subjective impressions about his own performance have no bearing on the inquiry.
In any event, even if theoretically Santaguida's present-day testimony about his past conduct were relevant and non-cumulative, it still would be unreliable due to his current medical condition. Rocco Santaguida, Santaguida's son and caregiver, testified that Santaguida's cognitive abilities are so compromised that he needs almost round-the-clock assistance and supervision. See, e.g., ECF No. 1957 at 15, 22-24, 27-29. Rocco as well as Dr. Sammartino, Santaguida's treating physician, both testified as to Santaguida's confusion and inability to understand questions and the nature of events happening around him. Id.; ECF No. 1970 at 21, 23-25. All of the witnesses, including Dr. Levin, Defendant's expert, agreed that Santaguida currently suffers from mid-severe dementia. See, e.g., ECF
*857 No. 1970 at 85. Based on this unrebutted testimony, the Court concludes that if called to give evidence at a hearing in 2019, Santaguida could not reliably interpret or understand questions posed concerning his prior actions as counsel; explain the basis for decisions he made in that capacity; comprehend or appreciate the nature of the proceeding before the Court; or otherwise meaningfully assist counsel or the Court with his testimony. Therefore, given Santaguida's cognitive impairment, his testimony would be of questionable relevance. See Fed. R. Evid. 401 ("Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action.").
C. Hardship to Santaguida
As to the hardships on Santaguida, the burden imposed on him by requiring his testimony would be unreasonable and oppressive. Santaguida would be placed in a confrontational setting, and subjected to accusatory if not out-right hostile questioning about his previous conduct. Based on the testimony adduced at the motion to quash hearing, it is highly likely that he would be confused and would not understand what was happening. In his current condition, Santaguida would be seriously adversely affected by testifying at a hearing.
D. Sufficiency of the record
Defendant argues that additional information is needed before the Court can rule on the Motion to Quash. The Court disagrees. Dr. Sammartino's first-hand medical findings and Rocco Santaguida's first-hand observations support Dr. Sammartino's conclusion.
The Court also rejects what is really a late-stage attempt to seek and introduce further information that if at all relevant should have been sought at an earlier date.[3]
Even assuming that this additional information would shed more light on Santaguida's present condition, a matter that is not at all apparent, Defendant is clearly out of time. Despite being in receipt of Dr. Sammartino's report for many months, which address Santaguida's cognitive impairment, Defendant has failed to explain why such information was not timely requested.[4] Moreover, Defendant overlooks the fact that Dr. Levin attended the first hearing on this matter where Dr. Sammartino's report was discussed, and that a four-month gap transpired between the first and second hearings. Thus, there can be no doubt that for many months, Defendant, his several counsel, and his expert were on notice about the issues that Defendant argues must now be further explored.
Defendant bore the burden to seek what he claims are relevant records. Having failed to do so in a timely fashion, he cannot be heard to complain the he needs those records to argue his case.
IV. CONCLUSION
The Court concludes that under these circumstances, Santaguida has met his *858 heavy burden to support the motions to quash. The need for the testimony is minimal, and in any event, because Santaguida is so cognitively impaired, he is now unable to provide meaningful testimony. To require him to testify would be unreasonable, oppressive, and an undue burden, all for little or no probative value in return. The Court will grant the motion to quash the subpoena, and Santaguida will not, therefore, be required to testify at an evidentiary hearing in support of Defendant's § 2255 Motion.
ORDER
AND NOW , this 25th day of March, 2019, upon consideration of the Motion to Quash Subpoena to Non-Party Witness Joseph Santaguida (ECF No. 1919), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the Motion to Quash Subpoena to Non-Party Witness Joseph Santaguida (ECF No. 1919) is GRANTED .
AND IT IS SO ORDERED.

Courts in this District and other Circuits have held that a would-be quasher carries a "heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive." Pennmont Sec. v. Wallace, No. CIV. A. 06-1646, 2008 WL 834379, at *7 n.7 (E.D. Pa. Mar. 26, 2008) (quotation marks omitted) (quoting Small v. Provident Life & Acc. Ins. Co., No. 98-2934, 1999 WL 1128945, at *1 (E.D. Pa. Dec.9, 1999) ); Pepsi-Cola Metro. Bottling Co. v. Ins. Co. of N. Am., No. CIV 10-MC-222, 2011 WL 239655, at *3 (E.D. Pa. Jan. 25, 2011) ("This burden is particularly heavy to support a motion to quash as contrasted to some more limited protection." (quotations marks and citation omitted); Irons v. Karceski, 74 F.3d 1262, 1264 (D.C. Cir. 1995) ; In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig., 669 F.2d 620, 623 (10th Cir. 1982).

District courts in other parts of the country have addressed whether a potential witness's or party's cognitive ability is impaired, and if so, whether the impairment affects the witness's or party's ability to participate in civil discovery. See, e.g., Grand Oaks, Inc. v. Anderson, 175 F.R.D. 247, 250 (N.D. Miss. 1997) ; Wright & Miller, 8A Federal Practice & Procedure § 2037 (3d ed. 2008) (citing Grand Oaks, 175 F.R.D. 247 ).
In the context of interrogatories, one court did not require a defendant to answer interrogatories because he suffered from dementia and two other conditions that made it difficult for him to remember names or recall words needed to speak or write, and also made him think he was giving truthful answers to questions when he did not know the answer. See Miller v. Holzmann, 238 F.R.D. 111, 111 (D.D.C. 2006).
In a similar situation, another court did not require a party to answer interrogatories where he "may have understood what he was doing when he signed the sales contract at issue ... [but] he is not now, and has not been for at least the past year, capable of relating that understanding to someone else due to a seriously impaired memory and an inability to recognize where his memory is faulty." Hometown Folks, LLC v. S & B Wilson, Inc., No. 1:06-CV-81, 2007 WL 2227817, at *8 (E.D. Tenn. July 31, 2007).

Defendant argues he needs "the full electronic and paper records of the raw testing material and test results performed on Mr. Santaguida." ECF No. 1967 at 8. He further argues that Dr. Levin should be given time to review these records and reappear at another hearing "to opine on whether or not Mr. Santaguida is capable of appearing and testifying in court ...." Id.

To the extent any third party refused to provide records that pertained to Santaguida's present competency to testify, Defendant should have sought relief from the Court to command production of any such records.