UNITED STATES of America, Appellee,

v.

Ron "Ronnie" JONES, Appellant.

No. 82–1467.

United States Court of Appeals, Fourth Circuit.

Submitted June 15, 1982.

Decided June 24, 1982.

Michael Morchower, John B. Boatwright, III, and Morchower & Luxton, Richmond, Va., on brief, for appellant.

David P. Baugh and Patricia A. Kerwin, Asst. U. S. Atty., Richmond, Va., on brief, for appellee.

Before BUTZNER, MURNAGHAN and ERVIN, Circuit Judges.

MURNAGHAN, Circuit Judge:

A commitment for civil contempt has been imposed following refusal by Ron "Ronnie" Jones to answer questions posed to him in an appearance, on May 20, 1982, before a federal grand jury sitting in Richmond, Virginia. The continued failure to answer could lead to incarceration for as much as ten months, the remaining prospective life of the grand jury. To allow for the possibility of an extension or extensions in the grand jury's life, the court's order set an outside maximum for confinement of eighteen months. Jones, of course, has been in a position to go free at any time by answering the questions, thereby purging himself of contempt.

Prior to Jones' appearance before the grand jury, on May 19, 1982, immunity was conferred on him pursuant to 18 U.S.C. §§ 6002 and 6003. Jones, twenty-nine years of age, in appealing the commitment for civil contempt, asserts two grounds to justify his refusal to answer. We find neither to be persuasive.

■ First Jones contends that the questioning before the grand jury was retaliatory action on the part of the government, in consequence of (a) his having succeeded in obtaining acquittals in two previous jury trials concerning claimed federal offenses, and (b) his assertion of a Fifth Amendment privilege against testifying when called to appear on March 15, 1982 before the grand jury. Jones relies on the rationale of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). *See also United States v. Johnson*, 537 F.2d 1170 (4th Cir. 1976); *Midgett v. McClelland*, 547 F.2d 1194 (4th Cir. 1976); *United States v. Goodwin*, 637 F.2d 250 (4th Cir. 1981), *cert. granted*, 454 U.S. 1079, 102 S.Ct. 632, 70 L.Ed.2d 613 (1981).

All those cases, however, deal with plans which would culminate in a serious violation of an individual's rights (attempts to secure increased punishment (a) because an appeal was taken or a post-conviction proceeding pursued, or (b) because a jury trial was prayed where a petty offense had been charged, or (c) following conviction on re-trial for a different offense).

In the present circumstances the "imposition" was merely to require the answering of questions clearly relevant to an appropriate line of grand jury inquiry, as to which Jones had been immunized. The prosecutor explained, and the trial court evidently accepted the explanation, that: "The reason he had been subpoenaed and the questions that have been propounded to him ... dealt with how he was employed; what do you do for a living; how much do you make.... I wasn't going any further than that Your Honor."

The court then interjected: "You have gone as far as you are going to go?" The prosecutor responded: "Yes, Your Honor."

In our judgment there was no attempt at punishment or retaliation, actual or apparent, rendering the line of cases cited inapposite.

■ Second, Jones contends that he will, if he must answer the questions, be compelled to give evidence against his father. He relies on a supposed familial privilege, referring to Rule 501 of the Federal Rules of Evidence ("... privilege ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."). He also has cited *Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980) for the proposition that the intention of Rule 501 was "not to freeze the law of privilege ... [but] ... rather was to 'provide the courts with the flexibility to develop rules of privilege on a case by case basis,' ... and to leave the door open to change."

However, the result in *Trammel*, operating as it did to narrow, not expand, the scope of marital testimonial privilege, stands as an obstacle in Jones' path, not as an assistance. The Court carefully explained:

Testimonial exclusionary rules and privileges contravene the fundamental

principle that "'the public ... has a right to every man's evidence.'" *United States v. Bryan*, 339 U.S. 323, 331 [70 S.Ct. 724, 730, 94 L.Ed. 884] (1950). As such, they must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Elkins v. United States*, 364 U.S. 206, 234 [80 S.Ct. 1437, 1454, 4 L.Ed.2d 1669] (1960) (Frankfurter, J., dissenting). Accord, *United States v. Nixon*, 418 U.S. 683, 709–710 [94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039] (1974). Here we must decide whether the privilege against adverse spousal testimony promotes sufficiently important interests to outweigh the need for probative evidence in the administration of criminal justice.

445 U.S. at 50–51, 100 S.Ct. at 912.

What sparse authority Jones has summoned in support of his proposition that there is a familial privilege consists of:

1) An allusion to the rule in continental Europe where such a privilege obtains. Our law, of course, derives from England, which does not lie within the confines of "continental" Europe. The differences between Roman law and the common law are sufficient to reduce such authority to a status of practical irrelevance.

2) Dissents in *United States v. Penn*, 647 F.2d 876 (9th Cir. 1980) (en banc, 5–4 decision), a case involving "bribery" by the police to extract testimony from a five year old child. No such impropriety on the part of law enforcement authorities is present in the instant case. Jones is an emancipated adult, not an impressionable very young child. The majority determined:

> There is no judicially or legislatively recognized general "family" privilege, *cf. Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (spouse may testify against her mate over his objection); *United States v. Lefkowitz*, 618 F.2d 1313 (9th Cir. 1980) (spouse may provide information to police for use

in search directed against her mate), and we decline to create one here.

647 F.2d at 885.

3) *Application of A and M*, 61 App.Div.2d 426, 403 N.Y.S.2d 375 (1978), which reversed a lower court determination that a subpoena to the parents to appear before the grand jury should be quashed, but held that some "communications made by a minor child to his parents within the context of the family relationship [might], under some circumstances, lie within the 'private realm of family life, which the state cannot enter,'" so that, when they appeared, the parents might seek to assert a privilege as to questions concerning communications made to them in confidence by the minor son.

Under the circumstances, namely an emancipated, adult child's testimony which only arguably would be adverse to his father, limited to questions unrelated to his familial association with his parent, and involving no communication between father and son, we are satisfied that there simply is no privilege such as Jones has asserted. *See In re Kinoy*, 326 F.Supp. 400, 406 (S.D. N.Y.1970).

Whether, in changed factual circumstances, the presence of other considerations would make a difference we, of course, have no occasion to consider and do not now address. In particular, we do not endeavor to decide to what extent the age of the child and whether or not emancipation has occurred may or may not affect the decision as to whether any familial privilege exists. *Cf. People v. Fitzgerald*, 101 Misc.2d 712, 422 N.Y.S.2d 309 (1979); Annotation, *Testimonial Privilege for Confidential Communications between Relatives Other Than Husband and Wife—State Cases*, 6 A.L.R. 4th 545 (1981).

The facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

AFFIRMED.