**In re GRAND JURY PROCEEDINGS OF JOHN DOE, a minor, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 88–1238.**

United States Court of Appeals, Tenth Circuit.

March 23, 1988.

Submitted on the briefs [1]:

Steven Kuhnhausen and Kathryn Collard, Salt Lake City, Utah, for plaintiff-appellant.

Brent D. Ward, U.S. Atty., and Richard N.W. Lambert, David J. Schwendiman, and

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument.

Heather Nelson, Asst. U.S. Attys., Salt Lake City, Utah, for defendant-appellee.

Before LOGAN and BALDOCK, Circuit Judges, and BARRETT, Senior Circuit Judge.

BARRETT, Senior Circuit Judge.

John Doe, a fifteen year old minor, appeals from a civil contempt order entered by the district court pursuant to 28 U.S.C. § 1826 after Doe refused to testify before the grand jury, impaneled under 18 U.S.C. § 3321 and Fed.R.Crim.P. 6 to inquire into offenses against the criminal laws of the United States alleged to have been committed within the District of Utah. The contempt order directed that Doe be confined in the "Salt Lake Detention Home for the term of the grand jury or up to eighteen months, whichever is shorter, or until you decide to testify as to what you have seen, what you have heard, what you know. You will be released when you are ready to do that. This is strictly conditional upon you, upon your own decisions." (R., Vol. XII, p. 10.) The order of confinement was thereafter stayed pending this appeal based on a bond whereby Doe was committed to the custody of relatives subject to the condition that he not leave their home.

Doe refused to testify before the grand jury based on his assertion of a "parent-child" and "family" testimonial privilege not to be compelled to testify against his mother or other members of his family. He claims such testimony would violate his right to the free exercise of religion (Mormon), family privacy and integrity anchored to the First Amendment, the common law and Fed.R.Evid. 501. The district court found that under the facts of this case there is no such privilege. (R., Vol. II, Exh. 31, pp. 4–5.) The district court weighed the competing interests, including the fact that Doe had been granted immunity pursuant to 18 U.S.C. § 6003, in finding that "the scales are tipped toward requiring the testimony." *Id.* We agree with the district court's finding.

The invocation of the testimonial privilege mutually asserted by Doe, his mother and siblings, arose in the course of a grand jury proceeding called pursuant to 18 U.S.C. § 3321 and Fed.R.Crim.P. 6, inquiring into offenses against the criminal laws of the United States alleged to have been committed within the District of Utah. After Doe was duly subpoenaed to testify before the grand jury, he appeared but refused to testify. Thereafter Doe filed a Motion to Quash the Grand Jury Subpoena and the Government moved to compel his testimony. The district court granted the motion to compel, finding that there was no parent-child or family privilege under the facts of this case.

## I.

In *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), the Supreme Court was called upon to decide whether the privilege against adverse spousal testimony was important enough to outweigh the need for probative evidence in the administration of the criminal justice system. The Court observed that the common law had long recognized a privilege protecting communications between husband and wife, priest and penitent, attorney and client, and physician and patient. Even so, the Court observed that the Congress, in the enactment of Fed.R. Evid. 501, 28 U.S.C.,[2] granted the federal courts the authority to "continue the evolutionary development of testimonial privileges in federal criminal trials [and federal grand jury proceedings] ... with the flexibility to develop rules of privilege on a

---

2. Fed.R.Evid. 501, 28 U.S.C. reads:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

case-to-case basis." *Trammel* at 47, 100 S.Ct. at 910. The Court, however, keynoted the fact that:

> Testimonial exclusionary rules and privileges contravene the fundamental principle that 'the public ... has a right to every man's evidence.' *United States v. Bryan*, 339 U.S. 323, 331 [70 S.Ct. 724, 730, 94 L.Ed. 884] (1950). As such, they must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' *Elkins v. United States*, 364 U.S. 206, 234 [80 S.Ct. 1437, 1454, 4 L.Ed.2d 1669] (1960) (Frankfurter, J., dissenting). Accord, *United States v. Nixon*, 418 U.S. 683, 709–10 [94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039] (1974).

*Id.* at pp. 50–51, 100 S.Ct. at p. 912.

We have long recognized that the "very purpose of the criminal justice system is that of investigating, charging, trying, convicting and sentencing those who have committed offenses legislatively determined to be violative of the rights of persons and property." *Sinclair v. Turner*, 447 F.2d 1158, 1167 (10th Cir.1971), *cert. denied*, 405 U.S. 1048, 92 S.Ct. 1329, 31 L.Ed.2d 590 (1972). And "when the course of justice requires the investigation of truth, no man has any knowledge that is rightly private." 8 J. Wigmore, *Evidence in Trials at Common Law*, § 2192 (McNaughton rev. 1961) at 72. Thus, the search for truth in society's quest to administer justice creates a strong presumption against testimonial privileges because they result in the suppression of competent evidence.

Confidentiality is the essential element of any privilege, and the importance thereof must be weighed against the "need for production of relevant evidence in a criminal proceeding [which] is specific and central to the fair adjudication of a particular criminal case in the administration of justice. Without access to specific facts a criminal prosecution may be totally frustrated." *United States v. Nixon*, 418 U.S. 683, 713, 94 S.Ct. 3090, 3110, 41 L.Ed.2d 1039 (1974).

Appellant Doe contends that the "parent-child" privilege mutually asserted by him and his mother and the "family" privilege mutually asserted by him and his siblings against the requirement that he be compelled to testify against them would constitute compulsion in violation of "their rights to Free Exercise of Religion, Family Integrity, and Family Privacy, under the First Amendment, the Common Law, and Rule 501 of the Federal Rules of Evidence, under the unique facts and circumstances of this case." (Brief of Appellant, pp. 2, 3.) Appellant seeks an expanded construction of the law of privileged communications, in the face of the Supreme Court's moves to narrow or restrict the reach of recognized privileges. *See, Trammel v. United States, supra; United States v. Gillock*, 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980); *United States v. Nixon, supra.*

The parent-child and family privileges claimed here were never recognized at common law. Each of the circuit courts that have considered the claimed parent-child privilege and/or family privilege have rejected them. *See, Port v. Heard*, 764 F.2d 423 (5th Cir.1985) (While recognizing Supreme Court decisions declaring familial rights to privacy fundamental and personal involving marriage, procreation, contraception, child rearing and education held that a Texas state court decision finding that the parent-child testimonial privilege did not apply in a state grand jury proceeding, was not erroneous, and that the asserted privilege is not fundamental enough to afford it constitutional protection on privacy grounds; further, in response to the asserted right of a parent-child privilege based upon the free exercise clause of the First Amendment (Judaism), the court held that there was no violation of the Ports' right to freely exercise their religious beliefs and that, in keeping with *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), the State's inroad on religious liberty was justified in that it is the least restrictive means of achieving the compelling state interest in securing com-

plete grand jury investigation of crimes); *United States v. Davies,* 768 F.2d 893 (7th Cir.), *cert. denied,* 474 U.S. 1008, 106 S.Ct. 533, 88 L.Ed.2d 464 (1985) (Refusing to engraft a parent-child privilege into Rule 501, the court rejected generalized claims regarding the well-recognized sanctity of family life, holding that they must give way to the overriding needs of the truth-seeking process); *United States v. Ismail,* 756 F.2d 1253 (6th Cir.1985) (While recognizing that the court could hold that parent-child privilege exists in a federal criminal trial, held that the laudable goal of preserving the harmony and confidentiality of the parent-child relationship is outweighed by the predominant principle of utilizing all rational means for ascertaining the truth); *In re Grand Jury Subpoena of Dominic A. Santarelli,* 740 F.2d 816 (11th Cir.1984) (Upholding civil contempt order after son refused to answer relevant federal grand jury questions based on asserted parent-child privilege; court observed that there is no federal judicial support beyond *In re Grand Jury Proceedings Witness: Agosto,* 553 F.Supp. 1298 (D.Nev.1983), and *In re Grand Jury Proceedings (Greenberg),* 11 Fed.R.Evid.Serv. 579 (D.Conn. 1982) for recognition of a parent-child or family privilege, which are in derogation of the search for truth); *In re Grand Jury Subpoena Issued to Lawrence Matthews,* 714 F.2d 223 (2d Cir.1983) (Witness before a federal grand jury investigating possible criminal antitrust violations was not entitled to assert a "family" privilege to avoid answering questions which might incriminate his mother-in-law, father-in-law and brother-in-law based on the *Agosto* and *Greenberg* decisions; the asserted privilege does not outweigh the public's right to all testimony; there is no privilege that permits a person not to testify against family members); *United States v. Jones,* 683 F.2d 817 (4th Cir.1982) (Affirmed civil contempt order entered against Jones, an adult son, who refused to answer questions before federal grand jury on basis of asserted family privilege invoked in order to prohibit questions about his father); *United States v. Penn,* 647 F.2d 876 (9th Cir.1980) (Declined to create, pursuant to Fed.R.Evid.

501, a general "family" privilege that would result in suppression of evidence seized after police offered the defendant's five-year-old son $5 if he would show them where defendant had placed heroin in his back yard).

In addition to the line of Supreme Court decisions recognizing liberty and privacy interests involving marriage, family and home, appellant cites only two federal court decisions which have recognized a parent-child or family privilege. These decisions are *In re Grand Jury Proceedings Witness: Mary Agosto,* 553 F.Supp. 1298 (D.Nev.1983), and *In re Grand Jury Proceeding (Greenberg),* 11 Fed.R.Evid.Serv. 579 (D.Conn.1982). No federal court has followed either *Agosto* or *Greenberg.*

Appellant places great stress upon his religious commands in seeking reversal of the district court's contempt order:

> Appellant contends that his fundamental religious beliefs prohibit him from being compelled to testify against his mother or other members of his family, and that the Government cannot infringe upon the free exercise of this right under the First Amendment. The harm which would be suffered by appellant, as an individual, both emotionally and psychologically, by being compelled to give testimony against his mother and members of his family, in federal grand jury proceedings, against the command of his deeply held religious beliefs, and the resulting harm to appellant's family relationships ... renders the Government's actions to compel such testimony an impermissible invasion upon his personal autonomy and religious beliefs under the First Amendment.

Brief of appellant, p. 16.

The free exercise of religion is a fundamental right under the United States Constitution. However, the freedom to practice one's religion is not absolute. In *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Supreme Court instructed that a balancing test must be applied to determine whether the Free Exercise Clause should prevail over certain government interests. After an individual

demonstrates that certain government action places a substantial burden on his religious practice, that burden must be balanced or weighed against the importance of the government's interest. In the instant case, the government has demonstrated a compelling interest in investigating offenses against the criminal laws of the United States. We hold that claimed First Amendment privileges asserted here are outweighed by the government's interest in investigating crimes and enforcing the criminal laws of the United States. *See, Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Port v. Heard,* 764 F.2d 423 (5th Cir.1985); *Smilow v. United States,* 465 F.2d 802 (2d Cir.1972), *vacated on other grounds,* 409 U.S. 944, 93 S.Ct. 268, 34 L.Ed.2d 215 (1972).

The appellant, it will be recalled, was granted immunity pursuant to 18 U.S.C. § 6003 in respect to any testimony he may give before the federal grand jury. Thus, there was no fear that appellant's right against self-incrimination protected by the Fifth Amendment would be violated. Furthermore, appellant is not compelled to obey the district court's contempt order. Appellant may continue to refuse to testify before the grand jury on the basis of his claimed privileges and beliefs and simply suffer the confinement ordered by the district court.

The Supreme Court's reluctance to create new privileges is consistent with its caution expressed in *Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140 (1986), that federal courts should not take an expansive view of their authority to discover new fundamental rights.

We agree with the district court's finding that under the facts of this case there is no parent-child or family privilege.

## II.

■ Appellant contends that he was denied effective assistance of counsel required by the Sixth Amendment.

Counsel for appellant raised the Sixth Amendment contention in conjunction with his motions to quash subpoenas as "further

just cause for [appellant's] failure to follow this court's order." (R., Vol. XII, p. 5.) Counsel argued that appellant's Sixth Amendment "[r]ights were violated by the Court [refusing] to permit me either to be present in the grand jury room or to permit the witness to write down the questions and come out after each question and let me advise him." *Id.*

Our review of the record demonstrates that the Government prosecutors did not refuse to permit appellant to confer with his counsel outside the grand jury room. It is clear that appellant was not denied access to his attorney in the hallway.

During a hearing, following the court's ruling that no parent-child or family privilege could be invoked, counsel for appellant moved that all grand jury questions posed to appellant be reduced to writing or appellant be permitted to take notes and come out of the grand jury room to consult with counsel before responding. (R., Vol. VII, p. 8.) The court observed that it had previously rejected the above procedure, but recommended to the Government that it consider a possible, mutually agreeable accommodation. (R., Vol. VIII, p. 6.) The Government prosecutor responded that inasmuch as appellant had refused to give any testimony, any accommodation would be a useless act. *Id.* The district court recognized the problem, and after observing that the court had previously ruled that appellant could not invoke the parent-child or family privilege and that appellant had been granted immunity, inquired of counsel for appellant whether appellant would continue to refuse to answer questions on advice of counsel. *Id.* Counsel's response was that he (counsel) would have to see a particular question in order to determine whether a response by appellant would "... constitute a waiver of any privilege that he's asserted." *Id.* at 6, 7. Counsel conceded that in light of the superceding indictment that anything appellant might say relevant to the co-conspirators may constitute a waiver of the claimed privilege. *Id.* Thus, the asserted privilege was an integral part of the Sixth Amendment is-

sue, and there was no accommodation possible whereby appellant would testify.

In *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976), the Supreme Court made it clear that under settled principles and Fed.R. Crim.P. 6(d) a witness may not insist upon the presence of his attorney in the grand jury room.

Any accommodation that may have been reached in this case would have been fruitless because it is clear that regardless of the district court's ruling denying the existence of the asserted parent-child or family privilege, appellant would have continued to refuse to testify based on the asserted privileges. The Sixth Amendment ground advanced on appeal did not play any part in appellant's determination not to testify before the grand jury.

WE AFFIRM. The mandate shall issue forthwith.