UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————

**No. 13-4933**

(1:13-cv-03058-JFM-1)

———————————————


UNDER SEAL

Petitioner - Appellee

v.

UNITED STATES OF AMERICA

Respondent - Appellant

———————————————

O R D E R

———————————————


The Court amends its opinion filed June 16, 2014, as follows:

On page 2, third paragraph, line 1 – the word "Hartford" is corrected to read "Harford."

For the Court--By Direction

/s/ Patricia S. Connor, Clerk

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 13-4933**

─────────

UNDER SEAL,

                  Petitioner - Appellee,

      v.

UNITED STATES OF AMERICA,

                  Respondent - Appellant.

─────────

Appeal from the United States District Court for the District of Maryland, at Baltimore.   J. Frederick Motz, Senior District Judge.  (1:13-cv-03058-JFM-1)

─────────

Argued: May 15, 2014              Decided:  June 16, 2014

─────────

Before WILKINSON and THACKER, Circuit Judges, and HAMILTON, Senior Circuit Judge.

─────────

Reversed and remanded by published opinion.  Judge Thacker wrote the opinion, in which Judge Wilkinson and Senior Judge Hamilton joined.

─────────

**ARGUED:** Sujit Raman, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellant.  Peter Dennis Ward, LAW OFFICE OF PETER D. WARD, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant.

─────────

THACKER, Circuit Judge:

During the course of a grand jury investigation, the Government subpoenaed a 19-year-old man ("Doe Jr." or "Appellee") to testify with regard to potential federal charges against his father ("Mr. Doe").[1] Doe Jr. moved to quash the subpoena pursuant to Federal Rule of Criminal Procedure 17(c)(2), claiming that his testimony was shielded by a purported parent-child privilege. The district court granted the motion.

No federal appellate court has recognized a parent-child privilege, and we decline to do so here. As explained more fully below, Doe Jr. has not made a strong showing of need for the parent-child privilege, and "reason and experience" do not warrant creation of the privilege in the face of substantial authority to the contrary. Fed. R. Evid. 501. Therefore, we reverse and remand for further proceedings.

I.

A.

On November 30, 2012, Harford County, Maryland sheriff's deputies responded to a 911 domestic assault complaint

---

[1] In order to protect the confidentiality of the grand jury proceedings, we refrain from referring to involved parties by their proper names. See Fed. R. Crim. P. 6(e); In re Grand Jury, John Doe No. G.J.2005-2, 478 F.3d 581, 583 n.1 (4th Cir. 2007).

from Doe Jr.'s mother ("Mrs. Doe"). At this time, 18-year-old Doe Jr. lived in the house with his parents and two minor siblings. The deputies arrived and conducted a search. They seized approximately 40 firearms, including two assault-style rifles, a WWII-style pistol, a loaded semi-automatic handgun, and an AK-47 assault rifle; equipment used to alter and convert firearms (i.e., torches, welding equipment, and saws); and in the basement, marijuana plants growing in five-gallon buckets and drug paraphernalia.

Domestic abuse charges were filed against Mr. Doe, but Mrs. Doe later dropped them. Mr. and Mrs. Doe thereafter separated, and Doe Jr. moved in with his father because he claims he was "was kicked out of the house by [his] mother." J.A. 34.[2] Doe Jr. now lives exclusively with Mr. Doe, who helps to pay for his college education and supports him financially. Doe Jr. also testified that he has an aunt who helps with his college bills, and if she did not, he "would not have been able to go to college this year." Id. at 37.

B.

The Government began investigating the events of November 30, 2012, and referred the case to a grand jury for

---

[2] Citations to the "J.A." refer to the Joint Appendix filed under seal by the parties in this appeal.

4

possible prosecution pursuant to 26 U.S.C. § 5861(d).[3] On October 10, 2013, the Government subpoenaed Doe Jr. "to determine the ownership of the illegal guns" found at the Doe home. Appellant's Br. 4.

Doe Jr. filed a motion to quash with the district court on October 15, 2013, explaining that he believed he was called upon to testify "as part of an ongoing investigation of federal criminal charges pending against his father." J.A. 6. He contends that enforcing the Government's subpoena would violate the parent-child privilege:

> In a case like this, where the Government seeks to solidify a criminal case against the father by compelling the child's testimony, the necessary conclusion on the child's part will be that he, [Doe Jr.], is responsible for his father's prosecution. The damage to the father-son relationship is, under these circumstances, as certain as it is incalculable.

Id. at 10.

On October 16, 2013, the district court held a hearing on the motion to quash, at which Doe Jr. -- at that time 19 years old -- testified. The following exchange occurred:

---

[3] "It shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d).

5

> [THE GOVERNMENT]: [I]f you testify truthfully . . . are you saying that your dad . . . would not cut you off?
>
> [DOE JR.]: Yeah.
>
> Q: He would cut you off?
>
> A: No.
>
> Q: He would not cut you off. Would he hold it against you?
>
> A: Would he hold it against me? No.

J.A. 38. Nonetheless, Doe Jr. said that he had significant anxiety about testifying against his father, and provided doctors' notes to that effect.

At the district court hearing, the Government argued that there would be "no negative ramifications" resulting from Doe Jr. testifying. J.A. 50. Because Mrs. Doe had invoked her spousal privilege and the Government did not intend to call the two minor Doe children as witnesses, the Government asserted it needed Doe Jr.'s testimony to "fully explore all the evidence in this case to do a complete and thorough investigation." Id. The Government noted, "there is a chance that there were other people in the house besides [Mr. Doe] that might be responsible for the[] automatic weapons." Id. at 48.[4]

---

[4] In its response to Doe Jr.'s motion to quash, the Government stated, "[t]here is no basis to believe [Doe Jr.] is a target for the federal firearms offenses. Further, no information has been provided linking him to the illegal (Continued)

6

The district court granted the motion to quash from the bench, explaining, in part,

> The fact of the matter is, based upon the testimony as I have heard it, there is a continuing relationship between [Doe Jr.] and his dad. [Doe. Jr.]'s age is certainly not as old as some of the people in the other cases. I'm not sure quite how age cuts. If I had a very young person, I would be concerned about abuse. And there is a potential for abuse in this situation. With [Doe] Jr., if he were to testify, despite what he knew about his father's perception, certainly there would be a[n] incentive for the father to cut him off now. And if the father is convicted, then a source of income is cut off, so [Doe] Jr., might not be able to continue in college as he is now doing, nor have his necessities provided for.
>
> But . . . in the final analysis it has to do with one's perception of the proper role of government.
>
> . . .
>
> [O]ne must be concerned about the intersection of government and individual privacy rights. And . . . the government has every reason to be concerned here. And I'm not suggesting in any way that they're being motivated improperly by seeking this testimony. But I think the privilege does exist. It must be . . . considered on a case-by-case basis.

---

weapons." J.A. 24. Nonetheless, Appellee expressed concern regarding his own prosecution, and a proffer session was scheduled for October 11, 2013. The Government offered Doe Jr. limited use immunity; however, Doe Jr. rejected this offer, canceled the proffer session, and filed the instant motion.

7

> Hearing the evidence before me, I think that the relationship between [Doe Jr.] and his father does create the privilege. And [Doe Jr.] does not have to testify in the grand jury. I'm not -- despite what I've said, I'm not being critical of the government. I'm very suspicious about the relationship, of the possession of the automatic weapons and the growing of marijuana in pots in the basement. But I don't think that my suspicions about that provide an adequate reason for me to say that the government's and society's interests trump those constitutional -- the privacy rights of [Doe] Jr.
>
> So I find the privilege exists and grant the motion to quash.

J.A. 54-56.

The Government filed a timely notice of appeal. We possess jurisdiction pursuant to 18 U.S.C. § 3731. See In re Grand Jury, John Doe No. G.J.2005-2, 478 F.3d 581, 584 (4th Cir. 2007) ("This court has jurisdiction to review a district court order quashing a subpoena pursuant to 18 U.S.C. § 3731.").

II.

This court reviews the district court's quash of a grand jury subpoena for abuse of discretion. See In re Grand Jury, John Doe No. G.J.2005-2, 478 F.3d 581, 584 (4th Cir. 2007). However, "[w]hether to recognize a privilege under Federal Rule of Evidence 501 is a mixed question of law and fact, which we review de novo." Virmani v. Novant Health Inc., 259 F.3d 284, 286-87 (4th Cir. 2001).

8

III.

A.

1.

Federal Rule of Evidence 501 provides, "[t]he common law -- as interpreted by United States courts in the light of reason and experience -- governs a claim of privilege unless any of the following provides otherwise: [] the United States Constitution, [] a federal statute; or [] rules prescribed by the Supreme Court." Fed. R. Evid. 501 (hereinafter, "Rule 501") (emphasis supplied). Rule 501 allows for "recognition of a privilege based on a confidential relationship . . . on a case-by-case basis." Jaffee v. Redmond, 518 U.S. 1, 8 (1996) (recognizing psychotherapist-patient privilege under the "reason and experience" clause of Rule 501) (internal quotations marks omitted); see also Trammel v. United States, 445 U.S. 40, 47 (1980) ("Congress manifested an affirmative intention not to freeze the law on privilege. Its purpose was to provide the courts with the flexibility to develop rules of privilege on a case-by-case basis, and to leave the door open to change.") (internal citation and quotation marks omitted). Rule 501, therefore, "leaves the door open for courts to adopt new common-law privileges, and modify existing ones, in appropriate cases." United States v. Sterling, 724 F.3d 482, 501 (4th Cir. 2013).

In Trammel, however, the Supreme Court cautioned,

> [t]estimonial exclusionary rules and privileges contravene the fundamental principle that the public has a right to every man's evidence. As such, they must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.

445 U.S. at 50-51 (internal quotation marks, citation, and alteration omitted); see also Sterling, 724 F.3d at 502 ("As the Supreme Court made clear in Jaffee, the federal courts' latitude for adopting evidentiary privileges under Rule 501 remains quite narrow indeed.").[5]

---

[5] We pause at the outset to observe that new privileges are perhaps most aptly created via the legislative process. In an ever-changing world, we should be "circumspect about creating new privileges based upon perceived public policy considerations." In re Grand Jury, 103 F.3d 1140, 1154 (3d Cir. 1997); see also Branzburg v. Hayes, 408 U.S. 665, 706 (1972) (plurality) (suggesting that courts should yield to legislatures in fashioning privileges). Leaving this task to the legislative branch would also allow for the privilege to be more precisely defined. See In re Grand Jury, 103 F.3d at 1157 ("If a new privilege were to be engraved in the concrete of our jurisprudence . . . , then it should be framed so that its contours are clear and unambiguous[.]"); see also Upjohn Co. v. United States, 449 U.S. 383, 393 (1981) ("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.").

10

Only a very small handful of federal district courts in this country have recognized the parent-child privilege. The District of Nevada created the privilege where a minor child was issued a subpoena to offer grand jury testimony against his father. See In re Agosto, 553 F. Supp. 1298, 1299 (D. Nev. 1983). The court concluded that the "parent-child privilege . . . is based not only on the confidential nature of specific communications between parent and child, but also upon the privacy which is a constitutionally protectable interest of the family in American society." Id. at 1325. The court also reasoned, "the parent-child relationship exhibits similarities not only to the spousal relationship, which is based upon love and affection, but to the psychotherapist-patient relationship, which is based upon the guidance and 'listening ear' which one party to the relationship provides to the other party." Id. Of note, the continued vitality of Agosto is questionable. See In re Grand Jury Proceedings (Alba), No. 93-17014, 1993 WL 501539 at *1 n.1 (9th Cir., Dec. 2, 1993) (per curiam) ("The holding in Agosto is contrary to our decision in [United States v.] Penn[, 647 F.2d 876, 885 (9th Cir. 1980) (en banc)], and contrary to the overwhelming weight of case law from other circuits that also reject the concept of a family privilege."); see also Penn, 647 F.2d at 885 ("There is no judicially or legislatively

recognized general 'family' privilege, and we decline to create one here." (citations omitted)).

The District of Connecticut has recognized a parent-child privilege based on the First Amendment free exercise clause. See In re Grand Jury Proceedings (Greenberg), 1982 WL 597412, at *6 (D. Conn. June 25, 1982) (finding First Amendment basis for the parent-child privilege between a Jewish mother and daughter, explaining, "[t]he asserted parent-child privilege is available to Mrs. Greenberg, though only insofar as it rests on her religious conviction that she cannot testify against her [adult] daughter willingly or under legal compulsion.").

Finally, the Eastern District of Washington has "recog[nized] the existence of a parent-child privilege." In re Grand Jury Proceedings, Unemancipated Minor Child, 949 F. Supp. 1487, 1497 (E.D. Wash. 1996). That court explained,

> It is well settled that there is a right to privacy associated with family life, whether that be found in the "penumbras and emanations" of the Bill of Rights, in the Ninth Amendment, or in the concept of "liberty" that is derived from the Fourteenth Amendment. This right extends only to "matters so fundamentally affecting a person as the decision whether to bear or beget a child." Thus, the Supreme Court found that this right of privacy encompasses such private familial activities as marriage, procreation, contraception, and child rearing and education.

12

Id. at 1489 (footnotes with citations omitted). Although the court did not ultimately adopt the privilege in that particular case, it concluded that, based on the aforementioned privacy interests, "reason and experience, as well as the public interest, are best served by the recognition of some form of a parent-child privilege." Id. at 1497.[6]

These decisions have compared the parent-child privilege to other privileges. See, e.g., Agosto, 553 F. Supp. at 1307 (noting the importance of the attorney-client relationship in "the administration of justice" such that the "confidential nature of the relationship is . . . worthy of protection," and explaining, "the confidentiality inherent in certain properly functioning human relationships is also an

---

[6] New York state courts have recognized a privilege against divulging private familial communications, with emphasis on the privacy of the family unit. See, e.g., In re A & M, 61 A.D.2d 426, 433 (N.Y. App. Div. 1978) (recognizing the need to protect and foster open communication between children and parents, and stating, "If we accept the proposition that the fostering of a confidential parent-child relationship is necessary to the child's development of a positive system of values, and results in an ultimate good to society as a whole, there can be no doubt what the effect on that relationship would be if the State could compel parents to disclose information given to them in the context of that confidential setting."); People v. Fitzgerald, 422 N.Y.S.2d 309, 312 (N.Y. Cnty. Ct. 1979) ("[A] parent-child privilege does exist in this State, flowing directly from such rights as are granted by both the Federal and New York State Constitutions, U.S. Constitution, Amendments 9 and 14, New York State Constitution, Art. 1 § 6, § 1, which have fostered the recognition of what has come to be known as the 'right to privacy.'").

13

important goal for society to recognize and protect."); id. at 1325 ("There is no reasonable basis for extending a testimonial privilege for confidential communications to spouses, who enjoy a dissoluble legal contract, while yet denying a parent or child the right to claim such a privilege to protect communications made within an indissoluble family unit[.]"); In re Grand Jury Proceedings, 949 F. Supp. at 1494 ("As with spousal relationships, reason and experience dictate that parents and children share a unique relationship.").

In contrast, every federal appellate court that has considered adoption of the parent-child privilege -- including our own -- has rejected it. See, e.g., United States v. Dunford, 148 F.3d 385, 391 (4th Cir. 1998) (declining to adopt the privilege where minor children were compelled to testify at their father's trial, because the father abused the children and placed them at risk with illegal firearms); In re Grand Jury, 103 F.3d 1140, 1146-47 (3d Cir. 1997) (appeals from three cases, one involving an adult whose father was called upon to testify against him, and the other two involving a minor child who was called upon to testify against her father -- the court found that, as to both cases, no privilege existed); In re Erato, 2 F.3d 11, 16 (2d Cir. 1993) ("We see no basis for recognizing in federal law a new privilege that would permit a mother to assert a parent-child privilege to avoid testifying against her adult

14

son regarding transactions in which she appears to have benefited from her son's allegedly criminal activity[.]"); Grand Jury Proceedings of John Doe v. United States, 842 F.2d 244, 245–48 (10th Cir. 1988) (holding that compelling a 15-year-old Mormon to testify against his mother and other family members did not violate his First Amendment rights, given the government's interest in investigating federal crimes); United States v. Davies, 768 F.2d 893, 899 (7th Cir. 1985) (declining to adopt the privilege where a teenage girl provided a phone number to law enforcement, which led officers to her father's apartment, allowing them to begin surveillance of her father); United States v. Ismail, 756 F.2d 1253, 1258 (6th Cir. 1985) (declining to adopt the privilege where the Government subpoenaed a 30-year-old emancipated son to testify against his father at trial); In re Grand Jury Subpoena of Santarelli, 740 F.2d 816, 817 (11th Cir. 1984) (per curiam) (declining to adopt privilege where son did not want to testify against his father); In re Grand Jury Proceedings (Starr), 647 F.2d 511, 513 (5th Cir. 1981) (per curiam) (rejecting parent-child privilege where daughter refused to testify about her mother and step-father's alleged involvement in a homicide); United States v. Penn, 647 F.2d 876, 885 (9th Cir. 1980) (en banc) (declining to adopt the parent-child privilege to suppress a jar of heroin, where police

bribed a five-year-old boy to show them where his mother had hidden the heroin, and he did so).

3.

In our own cases of United States v. Jones, 683 F.2d 817 (4th Cir. 1982), and Dunford, 148 F.3d 385, we declined to recognize a parent-child privilege, but stopped short of issuing a blanket rejection of the privilege.

In Jones, we declined to adopt the privilege where the Government subpoenaed a 29-year-old man to testify against his father during grand jury proceedings. See 148 F.2d at 818-19. However, we limited the holding as such:

> Jones is an emancipated adult, not an impressionable very young child. . . . Under the circumstances, namely an emancipated, adult child's testimony which only arguably would be adverse to his father, limited to questions unrelated to his familial association with his parent, and involving no communication between father and son, we are satisfied that there simply is no privilege such as Jones has asserted.
>
> Whether, in changed factual circumstances, the presence of other considerations would make a difference we, of course, have no occasion to consider and do not now address. In particular, we do not endeavor to decide to what extent the age of the child and whether or not emancipation has occurred may or may not affect the decision as to whether any familial privilege exists.

Id. at 819 (citation omitted).

16

In *Dunford*, the defendant, a father of two minor daughters, was convicted of fourteen counts of illegally possessing firearms and ammunition. *See* 148 F.3d at 387. At his trial, a witness testified that Dunford abused his daughters by, in one instance, placing a gun to his daughter's head and threatening to kill her, and in another instance, kicking his daughter in the ribs and hitting her in the eye, causing a bruise. But when the Government called Dunford's daughters to testify against him, they both denied that this abuse occurred.

Nonetheless, after his conviction, Dunford appealed, arguing that by allowing his daughters to testify against him, the district court violated his parent-child testimonial privilege. *See Dunford*, 148 F.3d at 390. We rejected this argument, explaining,

> This circuit has never recognized a parent-child testimonial privilege. . . . This case does not present the circumstances through which to address whether to recognize a parent-child testimonial privilege for minor children. Dunford was charged with illegally possessing guns in circumstances where he was abusing his children and placing them at risk with those guns. This is not the beneficial family unit that history has celebrated, and this is not the relationship which Dunford argues in principle should remain protected.

*Dunford*, 148 F.3d at 391.

As in *Jones*, however, the *Dunford* court also left room for adoption of the privilege under certain circumstances:

17

> There may be much to commend a testimonial privilege in connection with the testimony of or against a minor child to preserve the family unit which is so much under stress in today's society. The tangible and intangible benefits of keeping families intact often seem to be forgotten in today's willingness to enact laws that readily authorize the fracture of the family or that provide incentives for doing so. In Trammel, the Court observed that casting aside a privilege that affects "marriage, home, and family relationships -- already subject to much erosion in our day -- counsels caution." 445 U.S. at 48. But even if such a privilege were to be recognized, it would have to be narrowly defined and would have obvious limits, perhaps such as where the family fractures itself or the child waives the privilege or where ongoing criminal activity would be shielded by assertion of the privilege.

Dunford, 148 F.3d at 391 (internal citation and alteration omitted).

## B.

Considering the legal landscape set forth above, we conclude the district court erred in creating a parent-child privilege in this case. As one of our sister circuits has explained, we should create a new privilege "only after careful consideration in the face of a strong showing of need for the privilege." In re Grand Jury Investigation, 918 F.2d 374, 383 (3d Cir. 1990). There is no such showing here.

First, Doe Jr. is "not an impressionable very young child," but an adult college student. Jones, 683 F.2d at 819.

18

And although Mr. Doe provides Doe Jr.'s room and board, buys his clothing, and "contributes a substantial amount" to his college tuition, Doe Jr. himself acknowledged that Mr. Doe would not "cut [him] off" or "hold it against [him]" if Doe Jr. testified truthfully. J.A. 37-38; see also id. at 37 (The Court: "Has your father threatened to cut off his aid to you if you testify?" Doe Jr.: "Absolutely not."). Nor does Doe Jr. rely solely upon Mr. Doe for support for his schooling. See id. at 37 ("My aunt helped with the college as well. Otherwise, I would not have been able to go to college this year.").

Further, because the Government simply seeks to determine the ownership of the firearms found at the Doe residence, we cannot say with certainty that Doe Jr.'s potential testimony would be of a nature that would damage the father-son relationship, or that creating the privilege will promote the privacy interests a parent-child privilege is meant to protect. Indeed, as the Government explained at the district court hearing, "[T]here is a chance that there were other people in the house besides [Mr. Doe] that might be responsible for the[] automatic weapons." J.A. 48. See Jones, 683 F.2d at 819 (declining to adopt the parent-child testimonial privilege where the evidence to be gathered would "only arguably . . . be adverse to his father, limited to questions unrelated to his familial association with his parent, and involv[e] no

19

communication between father and son" (emphasis supplied)); In re Grand Jury Proceedings, 949 F. Supp. at 1497 (parent-child testimonial privilege did not apply because minor child did not "show[] how, or to what extent, his testimony would require revelation of actions or communications that would be adverse to his father's interests"); cf. Sterling, 724 F.3d at 502 (noting that for any privilege to arise, "'the communications [sought] must originate in a confidence that they will not be disclosed'" (quoting 1 McCormick on Evidence § 72 n.7 (Kenneth S. Broun ed., 7th ed. 2013) (alteration omitted)). Therefore, the possibility of injury to the harmonious relationship between Doe Jr. and Mr. Doe is slight to nil.

Moreover, courts have acknowledged time and again the fundamental principle that the public has a right to "every man's evidence," Trammel, 445 U.S. at 50 (internal quotation marks omitted), and in this case, there is no good reason to thwart that right. Doe Jr. was the only individual living in the Doe household at the time of the 911 call who is available to testify, save the two minor Doe children. Thus, the "sought-after testimony is of demonstrated relevancy to the grand jury's investigation." United States v. Under Seal, 714 F.2d 347, 350 (4th Cir. 1983). Creating a parent-child privilege in this case would therefore discount the Supreme Court's admonishment that only limited exceptions should trump "the normally predominant

20

principle of utilizing all rational means for ascertaining truth." Jaffee, 518 U.S. at 9 (internal quotation marks omitted); see also United States v. Nixon, 418 U.S. 683, 710 (1974) ("[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.").

Finally, we do not believe the purported purpose of the parent-child privilege would be duly served by shielding Doe Jr. from testifying about the firearms seized on November 30, 2012. In her 911 call that spurred the Government's investigation, Mrs. Doe alleged spousal abuse.[7] Moreover, the home in which she and Mr. Doe were raising two minor children contained automatic weapons and numerous other firearms, and there were illegal drugs growing in the basement. As the district court itself recognized, "[t]he possession of the automatic firearms, and the presence of marijuana growing in the basement in 5 gallon pots certainly gives the government reason to be concerned." J.A. 54.

Under these circumstances, Doe Jr. has not provided a strong showing that adoption of the parent-child privilege would

---

[7] At the district court hearing, the Government also read a letter from Mrs. Doe alleging that Mr. Doe abused her while she was pregnant with Doe Jr.'s younger sister in 1996. Doe Jr. denied that this abuse occurred.

21

"promote[] sufficiently important interests to outweigh the need for probative evidence in the administration of criminal justice." Jones, 683 F.2d at 819 (quoting Trammel, 445 U.S. at 51).

IV.

For the foregoing reasons, the district court erred in adopting the parent-child privilege and excusing Doe Jr. from testifying before the grand jury. We reverse and remand.

REVERSED AND REMANDED