The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 8, 2018

## 2018COA36

**No. 18CA0398, People v. Ray and Concerning Lindecrantz — Criminal Law — Review of Judgments — Death Penalty Cases — Postconviction Review — Witnesses; Constitutional Law — First Amendment — Freedom of Religion**

A division of the court of appeals considers whether a court may compel a witness to testify in response to questions by the prosecutor in a death penalty post-conviction proceeding when the witness claims that testifying would violate her right to freely exercise her religion. The division concludes that any potential burden on those rights must give way to the state's paramount interests in ascertaining the truth and rendering justice. Accordingly, the division affirms the district court's order holding the witness in direct contempt of court.

COLORADO COURT OF APPEALS                                    **2018COA36**

Court of Appeals No. 18CA0398
Arapahoe County District Court No. 06CR697
Honorable Michelle A. Amico, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Robert K. Ray,

Defendant,

and Concerning Greta Lindecrantz,

Respondent-Appellant.

ORDER AFFIRMED

Division A
Opinion by JUDGE J. JONES
Hawthorne and Terry, JJ., concur

Opinion Modified and
Selected for Official Publication

Announced March 8, 2018

Cynthia H. Coffman, Attorney General, Matthew Grove, Assistant Attorney
General, Denver, Colorado, for Appellee

Killmer, Lane & Newman, L.L.P., Mari Newman, Denver, Colorado, for
Respondent-Appellant

¶ 1    Greta Lindecrantz appeals the trial court's order holding her in direct contempt for refusing to testify pursuant to the People's subpoena in this Crim. P. 32.2 proceeding.  She contends that requiring her to testify in response to questions posed by the prosecutor on direct examination violates her rights under the Free Exercise Clause of the United States Constitution.  We conclude, however, that any potential burden on those rights must give way to the state's paramount interests in ascertaining the truth and rendering justice.  So we affirm.

## I.  Background

¶ 2    The People charged Robert K. Ray with the first degree murder of Javad Marshall-Fields, and sought the death penalty.  His attorneys hired Ms. Lindecrantz as an investigator to assist them, primarily, it appears, in the penalty phase of the case.  A jury found Ray guilty and determined that he should be sentenced to death for his crime.  The court imposed that sentence.

¶ 3    As required by both statute and rule, the trial court then began the postconviction review of Ray's conviction and sentence.  *See* §§ 16-12-201 to -210, C.R.S. 2017; Crim. P. 32.2.  In that proceeding, Ray seeks postconviction relief, claiming that his

1

counsel rendered ineffective assistance. Part of that claim challenges Ms. Lindecrantz's investigation (as well as that of her colleagues). The prosecution served her with a subpoena to testify. She moved to quash the subpoena, arguing that as a devout Mennonite she is opposed to the death penalty on religious grounds, and that she feared that by truthfully answering the prosecutor's questions she would provide information from which the prosecutor could argue that Ray received effective assistance. That, in turn, could result in the court denying Ray's ineffective assistance claim and, consequently, upholding the conviction and death sentence.

¶ 4      In a thorough, well-reasoned written order, the trial court denied Ms. Lindecrantz's motion to quash. In short, the court ruled that whether rational basis or strict scrutiny analysis applies, Ms. Lindecrantz's sincerely held religious beliefs don't justify refusing to answer the prosecutor's questions under oath in response to the People's subpoena.

¶ 5      When the prosecutor called Ms. Lindecrantz to the stand, the trial court explained to her the obligation to testify, the concept of contempt, and the potential consequences if she refused to testify.

2

Nonetheless, Ms. Lindecrantz refused to answer the prosecutor's questions. The court continued to warn her, but she persisted in insisting that her religious beliefs precluded her from answering. The court found her in direct contempt and remanded her to the sheriff's custody "until she elects to answer the questions" as a remedial sanction. The court declined to stay its order, and so Ms. Lindecrantz has been in jail since February 26 of this year.

¶ 6     Ms. Lindecrantz appeals the order finding her in contempt. But her claim has changed somewhat. She now says that being called as a witness for the prosecution makes her a "tool" or "weapon" of the prosecutor's effort to execute Ray. She would answer questions posed by the trial court on direct examination, and questions posed on cross-examination by the prosecutor and defense counsel. She doesn't want to answer questions posed by the prosecutor on direct examination. On March 2, the trial court rejected that proposed procedure (a matter we'll get to later).

¶ 7     We've handled this appeal in a greatly expedited way in light of Ms. Lindecrantz's imprisonment, concerns about her health, and the pendency of the Rule 32.2 proceeding in the trial court. *See* C.A.R. 2 (appellate court may suspend requirements of the

3

appellate rules in the interest of expediting a decision).[1]  But we have reviewed the relevant portions of the trial court record, the transcript of the hearing at which the trial court found Ms. Lindecrantz in contempt, and Ms. Lindecrantz's filings in this court explaining her position.  And we held oral argument on the afternoon of March 2.  Having considered these materials, the parties' arguments, and the relevant law, we conclude that we must affirm the trial court.

## II.  Discussion

¶ 8    The question before us is this: May Ms. Lindecrantz refuse to testify in this capital case in response to the People's subpoena — that is, testify as a witness called by the prosecution — because she believes — as a tenet of her religion — that the death penalty is wrong?  We answer that question "no."

¶ 9    We begin by assuming that Ms. Lindecrantz's religious beliefs on this subject are both genuine and sincerely held.  And we will

---

[1] In the interest of resolving the appeal as quickly as possible, we originally issued this opinion as unpublished.  But because the case concerns an issue of first impression in Colorado, and an issue of public interest, we've decided that it should be officially published.  *See* C.A.R. 35(e).  We've made a few minor changes to the opinion for the purpose of clarity.

assume that allowing the prosecution to call her to testify would substantially burden her exercise of her religious beliefs.[2]  But this is only one side of the scale; the state also has interests which carry weight and must be considered.

¶ 10    How we weigh these competing interests turns first on the level of scrutiny we give to the state's desire to elicit the information Ms. Lindecrantz possesses.  Arguably, we need only determine whether the state has a rational basis for seeking Ms. Lindecrantz's testimony.  This is so because that level of scrutiny applies to neutral laws of general applicability, *Emp't Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 879 (1990), and Crim. P. 17, pursuant to which the prosecution issued the subpoena, could be regarded as one such law.[3]  Ms. Lindecrantz doesn't argue that the prosecution lacks a rational basis for its subpoena (nor could she plausibly do

---

[2] This is a somewhat dubious proposition, given that regardless of whether questions are asked by the prosecutor on direct or cross-examination, the answers would be the same and would have the same effect on Ray's claim.  But we'll leave that aside.

[3] Congress enacted the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb-1 (2012), to return Free Exercise law to its pre-*Smith* status.  RFRA, however, doesn't apply to state court proceedings.

so).  So if this level of scrutiny applies, the People necessarily prevail.

¶ 11    But it's not that simple.  Ms. Lindecrantz argues that we must apply strict scrutiny, for three reasons: (1) death penalty cases are "different"; (2) in addition to suffering a violation of her right to free exercise of religion, the People seek to compel her to speak; and (3) Crim. P. 17 isn't really neutral because subsection (h) allows a court to deem a person in contempt only if that person fails to obey a duly served subpoena "without adequate excuse."  On the latter, she argues that because recalcitrant witnesses' excuses for refusing to appear or testify must be assessed on a case-by-case basis, subsection (h) doesn't apply uniformly.

¶ 12    Taking Ms. Lindecrantz's "death is different" argument first, we find no authority supporting the notion that, when the death penalty is on the table, witness testimony is subject to different rules than those that apply in all other cases.  The cases on which Ms. Lindecrantz relies all concern procedural rights of defendants in capital cases.  Nothing in those cases even hints that witnesses have more license to refuse to testify in capital cases than they have in other cases.  And no principle espoused in those cases can be

6

extrapolated to apply in Ms. Lindecrantz's favor without doing serious damage to the twin notions of intellectual honesty and fealty to the law. Besides all that, as discussed more fully below, the fact that this is a capital case actually cuts against Ms. Lindecrantz's position.[4]

¶ 13 Her third argument fares somewhat better, but ultimately fails.[5] We will assume, without deciding, that strict scrutiny applies because Crim. P. 17(h) is not truly neutral. Under that test, "any burden on a religious practice must be narrowly tailored to advance a compelling governmental interest." *Town of Foxfield v. Archdiocese of Denver*, 148 P.3d 339, 346 (Colo. App. 2006); *see Wisconsin v. Yoder*, 406 U.S. 205, 215, 220 (1972); *Sherbert v. Verner*, 374 U.S. 398, 403 (1963).

¶ 14 The governmental interests in this case are obviously compelling. Though Ms. Lindecrantz characterizes the state's

---

[4] We also observe that creating special rules for witnesses in capital cases is fraught with the potential for undesirable consequences, many of which we likely can't foresee.

[5] Because we decide to apply strict scrutiny based on Ms. Lindecrantz's argument that Crim. P. 17(h) isn't truly neutral, we needn't address her argument that strict scrutiny applies because she is being compelled to speak (a so-called "hybrid-rights" exception to rational basis review).

interest as seeing Ray put to death, that isn't it at all.  Rather, as
many courts addressing similar issues have said, the state has
compelling interests in ascertaining the truth and rendering a just
judgment in accordance with the law.  *See, e.g., Grand Jury
Proceedings of John Doe v. United States*, 842 F.2d 244, 246, 248
(10th Cir. 1988); *Port v. Heard*, 764 F.2d 423, 432-33 (5th Cir.
1985); *Smilow v. United States*, 465 F.2d 802, 805 (2d Cir.), *vacated
on other grounds*, 409 U.S. 944 (1972); *Keenan v. Gigante*, 390
N.E.2d 1151, 1155 (N.Y. 1979); *In re Williams*, 152 S.E.2d 317, 327
(N.C. 1967); *State v. Bing*, 253 S.E.2d 101, 102 (S.C. 1979).  These
interests are at their apex in this case, where the stakes — a man's
life — couldn't be higher.  *See In re Williams*, 152 S.E.2d at 327
(clergyman required to testify in capital case notwithstanding his
religious beliefs).

¶ 15     There remains the question whether holding Ms. Lindecrantz
in contempt is narrowly tailored to advance the government's
compelling interests.  She says that it isn't for two reasons.  First, it
isn't because the evidence the prosecution seeks to obtain from her
has been or could be obtained by other means.  But the trial court
judge, who is much closer to the action than we are, and who must

8

ultimately decide Ray's ineffective assistance claim, said otherwise. Suffice it to say that Ms. Lindecrantz has information directly relevant to the claim, she is in the best position to testify about much of that information, and it is unclear at this point all of what the prosecutor would ask her, what she would say in response, and how the prosecutor would follow up. *See In re Grand Jury Empaneling of Special Grand Jury*, 171 F.3d 826, 823-33 (3d Cir. 1999) (rejecting a similar argument); *Keenan*, 390 N.E.2d at 1155 (same).[6]

¶ 16 The second reason is that the court could proceed by asking her questions, to be followed by cross-examination by the prosecutor and defense counsel. The trial court rejected this suggestion because the court didn't want to take on, or appear to take on, the role of an advocate; taking on the role of a questioner could expose the court to accusations of bias; evidence would best be obtained by having the prosecution proceed as normal — by

---

[6] The one case Ms. Lindecrantz cites in support of her position on this issue, *Perez v. Paragon Contractors Corp.*, No. 2:13CV00281-DS, 2014 WL 4628572 (D. Utah Sept. 11, 2014), is distinguishable. That was a civil case, it was decided under RFRA, and there was a sufficient showing that the information in question could be obtained from other sources.

direct examination; and a witness can't be allowed to dictate the terms of her own examination.  We see nothing in these reasons with which to quarrel.[7]

¶ 17     In sum, we conclude that Ms. Lindecrantz's position fails under both rational basis and strict scrutiny analysis.

### III.  Conclusion

¶ 18     It's been said that the public has a right to every person's evidence.  *United States v. Bryan*, 339 U.S. 323, 331 (1950); *see Grand Jury Proceedings of John Doe*, 842 F.2d at 246 ("'[W]hen the course of justice requires the investigation of truth, no man has any knowledge that is rightly private.'" (quoting 8 J. Wigmore, *Evidence in Trials at Common Law* § 2192, at 72 (McNaughton rev. 1961))).  That is especially so in this case.  Though "religious beliefs are not lightly to be brushed aside and overridden by the order of a court, they must yield to the 'compelling interest' of the state in doing justice between the state and one charged with a serious criminal

---

[7] *People v. Esquibel*, 43 Colo. App. 191, 599 P.2d 981 (1979), on which Ms. Lindecrantz relies, is distinguishable.  In that case, the prosecution asked the court to call a witness as the court's own witness.  The prosecution in this case hasn't done anything like that.  And the judge in *Esquibel* didn't question the witness; direct and cross-examination were conducted in, more or less, the usual manner.  That's not what Ms. Lindecrantz is proposing.

offense for which, if guilt be established, his life may be forfeited." *In re Williams*, 152 S.E.2d at 327.

¶ 19    Ms. Lindecrantz is in a tough spot — caught between the proverbial rock and a hard place.  We take no pleasure in declining to extricate her.  But the state of the law being what it is, decline we must.

¶ 20    The order is affirmed.

JUDGE HAWTHORNE and JUDGE TERRY concur.